[No. 13713-1-I. Division One. December 10, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. ANNE
MARIE BRISEBOIS, *Appellant.*

158

*Raymond H. Thoenig* and *James E. Lobsenz* of *Washington Appellate Defender Association,* for appellant.

*Seth Dawson, Prosecuting Attorney,* and *Charles P. Schumacher* and *S. Aaron Fine, Deputies,* for respondent.

DURHAM, C.J.—Anne Marie Brisebois appeals her conviction of first degree theft/welfare fraud.

On July 26, 1977, Anne Marie Brisebois applied for public assistance. Brisebois was single, unemployed and pregnant. On the front page of the application form, in a shaded area, the following statement was printed: "Name of other persons living with me whether related or not." Brisebois did not provide a response to this statement. Underneath this statement, the application form contained another inquiry: "Name the other persons living in the household." Brisebois replied "none."

Based on Brisebois' responses, the financial service technician determined that Brisebois qualified for public assistance under the Aid for Dependent Children (AFDC) and food stamp programs. Brisebois' eligibility for food stamps and for the specific category of AFDC she obtained was based on her representation that the father of her child was not living in her household.

While she was receiving public assistance, Brisebois was required to submit to an AFDC eligibility review every 6 months, in which she was required to list any other person living in her household. Each month Brisebois also received a "change of circumstance" form. Brisebois was required to complete the form and return it to the Department of Social and Health Services (DSHS) if her living situation changed. Brisebois completed one such form in which she informed DSHS she had moved.

In actuality, Brisebois began living with her child's father, Daniel Shelton, in January 1978. They jointly signed a rental agreement. Shelton held three jobs. He worked as a nurse on weekends, sold food supplements and ran an upholstery business. Shelton gave part of his income to

Brisebois and his child. With this money and her AFDC checks, Brisebois paid the household bills. Shelton testified that his monthly income exceeded $1,000. When, in October 1980, DSHS discovered Brisebois' actual living conditions, the agency terminated her public assistance.

On November 19, 1982, the State filed an information charging Brisebois with welfare fraud. The information alleged that from September 1979 to October 1980, Brisebois received public assistance to which she was not entitled by willfully making false statements or willfully failing to reveal material facts to DSHS. The State amended the information on June 30, 1983, to charge the defendant with committing first degree theft/welfare fraud in September 1979. During trial, the State moved to amend the information to include the entire September 1977–October 1980 time period in its allegation. The trial court responded:

> Well, you better convince me that defense counsel has known all along and has been provided with discovery to support that there's no surprise to her now or I'm certainly not going to grant your motion.

The State explained that Brisebois had received discovery in January 1983. On each page of the discovery packet, the State included information pertaining to the defendant's unlawful conduct prior to 1979. Brisebois made a timely objection. She claimed that she was prejudiced by the amendment and that the statute of limitations barred prosecution for any conduct occurring prior to November 1979.

The trial court granted the State's motion. The trial court held that through the discovery provided by the State, Brisebois had adequate notice of the substance of the State's charges.

A jury found Brisebois guilty of first degree theft/welfare fraud. Brisebois' motion for an arrest of judgment was denied.

Brisebois' first contention on appeal is that the evidence adduced at trial was insufficient to support her conviction. Brisebois argues that, although the State may have

proved she was not eligible for a specific public assistance program, the State, as part of its prima facie case, must prove Brisebois was not eligible for *any* public assistance program. Brisebois candidly concedes that this court, in construing the welfare fraud statute,[1] has never imposed such a requirement. *See State v. Warren,* 25 Wn. App. 886, 611 P.2d 1308 (1980). The State, in its prima facie case, must show only that the defendant was ineligible for the specific program from which the defendant obtained income. *State v. Warren, supra.* The *Warren* court analogized the State's burden under the welfare fraud statute to the State's burden of proving the absence of self–defense. *Warren,* at 890. Once the defendant produces evidence of eligibility under another public assistance program, the State then bears the burden of proving beyond a reasonable doubt that the defendant was not eligible for that program. *State v. Warren, supra.*

Brisebois maintains that the Washington Supreme Court's decisions in *State v. Sass,* 94 Wn.2d 721, 620 P.2d 79 (1980) and *State v. Holmes,* 98 Wn.2d 590, 657 P.2d 770 (1983) require reversal of *Warren.* In *Sass,* the Washington Supreme Court held that the newly enacted Washington Criminal Code required all larcenies outside of RCW Title 9A to be treated as thefts. *Sass,* at 724. Thus, the term "grand larceny" in RCW 74.08.331 is superseded by the theft statute. Under the theft statute, the dollar amount unlawfully taken determines the degree of the crime.

Brisebois concludes from *Sass* that the term "any public

---

[1]The welfare fraud statute, RCW 74.08.331, provides in pertinent part:

"Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance affecting eligibility of need for assistance . . . as required by law, or a wilful failure to promptly notify the county office in writing as required by law or any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance, . . . obtains . . . *any public assistance to which he is not entitled* or greater public assistance than that to which he is justly entitled shall be guilty of grand larceny . . .". (Italics ours.)

assistance" in the welfare fraud statute means the dollar amount of public assistance. Brisebois reasons that to obtain a first degree theft conviction, the State must prove she was not entitled to receive $1,500. RCW 9A.56.030. To prove Brisebois was not entitled to receive that amount, the State must demonstrate that Brisebois was not eligible for public assistance under any program. Thus, the total amount of overpayment is an element of the crime that must be proved by the State beyond a reasonable doubt. Brisebois bolsters her contention with a quotation from *State v. Holmes, supra* at 597:

> The State need only prove that the applicant made a willfully false statement or material omission which resulted in an overpayment. The State must prove the amount of overpayment in order to prove a particular degree of theft . . .

We conclude, however, that *Warren* is consistent with *Sass* and *Holmes.* The *Warren* court understood that the total amount of overpayment is an element to be proved beyond a reasonable doubt. *Warren,* at 890. *Warren* simply requires a defendant to produce some evidence of eligibility under another public assistance program before requiring the State to prove the total amount of overpayment under that program. This holding is consistent with prior Washington law—even as to an element of an offense, the burden of production may be shifted to a defendant. *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977).

WAC Title 388 establishes numerous public assistance programs, including general assistance programs, food assistance programs, medical assistance programs, disaster relief programs and temporary housing programs. To require the State to prove a defendant ineligible for each of these programs would place an insurmountable burden on the State and make enforcement of RCW 74.08.331 impracticable. The Legislature cannot be presumed to have enacted an unenforceable statute. *Steele v. State,* 85 Wn.2d 585, 590, 537 P.2d 782 (1975).

Brisebois' next contention is that both her constitutional and statutory rights were violated by the mid–trial amendment of the information. The state constitution requires that a defendant be furnished with a copy of the nature and cause of the accusation against him.[2] The State never provided Brisebois with a copy of the amended information. Thus, Brisebois argues her constitutional rights were violated.

Brisebois relies on *State v. Carr,* 97 Wn.2d 436, 441, 645 P.2d 1098 (1982) for the proposition that the defendant must be provided with a copy of an amended information. Although Justice Rosellini's concurrence in *Carr* arguably supports the defendant's proposition, the majority opinion does not. The *Carr* majority based its decision on two factors. First, Carr specifically requested a copy of the amended complaint. Second, the State in its mid–trial amendment charged Carr with a different crime. *Carr,* at 440–41.

Neither of these factors are present here. Brisebois did not request a copy of the amended information. Nor did the State's amended information charge a different crime; it simply changed the applicable dates. Thus, *Carr* is not dispositive and Brisebois waived her right to receive a copy of the amended complaint. *See In re Salter,* 50 Wn.2d 603, 605, 313 P.2d 700 (1957).

Even if her constitutional rights were not violated, Brisebois contends that she was prejudiced by the mid–trial amendment. CrR 2.1(d) states:

> The court may permit any information to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced.

The defendant bears the burden of showing prejudice. *State v. Jones,* 26 Wn. App. 1, 6, 612 P.2d 404 (1980); *State*

---

[2] "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him, to have a copy thereof . . .". Const. art. 1, § 22 (amend. 10).

*v. Eaton,* 24 Wn. App. 143, 600 P.2d 632 (1979).

In evaluating prejudice, the court must determine if the defendant was misled or surprised. *State v. Brown,* 74 Wn.2d 799, 801, 447 P.2d 82 (1968). Here, the trial court determined that neither was the case. The State provided Brisebois with discovery outlining the State's witnesses' testimony. Much of this material involved Brisebois' actions prior to September 1979. The amended information did not require Brisebois to defend against any additional allegations. Nor was Brisebois required to rebut additional testimony. The trial court ruled correctly.

Finally, Brisebois argues that the statute of limitations barred prosecution for all conduct occurring before November 1979. The statute of limitations for theft is 3 years. RCW 9A.04.080. Brisebois argues that if the State was properly limited to proving those acts that fell within the statute of limitations period, the State would not be able to prove Brisebois took more than $1,500.

 Neither statute nor case law supports this contention. RCW 9A.56.010(12)(c) provides:

> Whenever any series of transactions which constitute theft, would, when considered separately, constitute theft in the third degree because of value, and said series of transactions are a part of a common scheme or plan, then the transactions may be aggregated in one count . . .

Whether successive takings constitute a single larceny is a question of fact for the jury. *State v. Vining,* 2 Wn. App. 802, 809, 472 P.2d 564, 53 A.L.R.3d 390 (1970). Brisebois neither argued at trial nor maintains on appeal that her crime was not continuous. "[When a] crime is continuous[,] [t]he crime is not completed until the continuing criminal impulse [is] terminated." *State v. Carrier,* 36 Wn. App. 755, 758, 677 P.2d 768 (1984). The statute of limitations does not begin to run until the crime is completed. *State v. Carrier, supra.* Here, the crime was completed in 1980, well within the 3–year statute of limitations.

164

The judgment and sentence is affirmed.

WILLIAMS and SCHOLFIELD, JJ., concur.

Review denied by Supreme Court March 1, 1985.