The **STATE** of Utah, Plaintiff and Respondent,

v.

Dixie L. **KIRGAN**, Defendant and Appellant.

No. 20579.

Supreme Court of Utah.

Dec. 11, 1985.

Nolan J. Olsen, Midvale, for defendant and appellant.

David L. Wilkinson, Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Defendant appeals from a judgment of guilty rendered by the trial court sitting without a jury on an offense of aggravated assault, a third degree felony, in violation of U.C.A., 1953, § 76-5-103 (1978 ed.). We affirm.

The facts reviewed in a light most favorable to the judgment of the trier of fact are as follows: Defendant engaged in an alter-

cation with Trisha Beck, who was eight months pregnant at the time, when Beck attempted to evict defendant's daughter from rental premises managed by Beck. From diametrically opposed testimony of defendant and Beck, the court could have believed Beck's version and found that defendant grabbed Beck's hair, pushed her against a wall, and "kneed" her three times in the groin, with full knowledge that Beck was pregnant. Beck reported to the emergency facilities of a hospital and was examined by her physician. No immediate damage to the fetus was observed. Within two days, Beck's girth expanded noticeably, and she had intermittent excruciating pain and contractions for the next five weeks. Her child was born with Down's syndrome. After the head emerged from the birth canal, it took the attending physician fifteen minutes to completely deliver the child. Postnatal examination revealed that the child had suffered a ruptured thoracic duct *in utero*. As a result, the fetus had developed hydrops, an accumulation of waste fluids in the body, which caused a distended abdomen in the child and resulted in the just-stated complications in the third stage of child birth.

Both defendant and the State examined their medical experts about the medical probability that the thoracic duct rupture had been caused by physical trauma. Beck's attending physician testified that it was his opinion that the assault caused the rupture and Beck's subsequent swelling within two days. In his opinion, the assault could have killed her, as the difficult delivery was life-threatening to both mother and child. Defendant's expert was the attending physician to the child. She testified that she had been made aware of two recent Down's syndrome cases accompanied by idiopathic thoracic duct rupture, but that in neither case had swelling set in, placing the rupture immediately prior to the time of delivery. Defendant's expert conceded that swelling of a pregnant woman's abdomen would occur within days of a thoracic duct rupture in the fetus and that the changes in Beck's condition could have been occasioned by the kicks administered to her abdomen. She further admitted that the hydrops was life-threatening to the child and that the child was in critical condition when she first attended him.

From the evidence presented, the court found that defendant had intentionally caused and attempted to inflict serious bodily injury on Beck and found her guilty of aggravated assault.

"Assault" is defined as (a) an attempt, with unlawful force or violence, to do bodily injury to another; or (b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another. U.C.A., 1953, § 76–5–102 (1978 ed.). A person commits aggravated assault if he (a) intentionally causes serious bodily injury to another, or (b) uses a deadly weapon or such means or force likely to produce death or serious bodily injury. § 76–5–103, *supra*.

Defendant's claims of error essentially state (1) that the trial court's findings were not supported by evidence tending to prove the statutory elements of the offense; (2) that defendant had a valid defense of self-defense; and (3) that the trial court erred in allowing the State to amend its information at trial.

The first two issues may be disposed of under our limited power of review in questions of fact decided by the trier of fact. As in jury verdicts, we will only interfere when the evidence is so lacking and insubstantial that a reasonable person could not possibly have reached a judgment beyond a reasonable doubt. *State v. McCardell*, Utah, 652 P.2d 942 (1982). Intent to commit a crime may be found from proof of facts from which it reasonably could be believed that such was defendant's intent. *State v. McClain*, Utah, 706 P.2d 603 (1985). The presentation of conflicting evidence does not preclude a finding of guilt beyond a reasonable doubt. *State v. Carlsen*, Utah, 638 P.2d 512, *cert. denied*, 455 U.S. 958, 102 S.Ct. 1469, 71 L.Ed.2d 676 (1982). That same standard applies to arguments of insufficiency of evidence raised in defense of self-defense.

*State v. Buel,* Utah, 700 P.2d 701 (1985). We hold that the court's ruling that defendant intentionally caused and attempted to inflict serious bodily injury on Beck was amply justified by competent record evidence.

At the end of its case, the State successfully moved the trial court to allow an amendment of the information from

aggravated assault, a third degree felony ... in violation of title 76, chapter 5, section 103, Utah Code Annotated 1953, as amended, in that the defendant, DIXIE L. KIRGAN, a party to the offense, assaulted TRISHA BECK by attempting to do bodily injury to her with unlawful force or violence and intentionally caused serious bodily injury to TRISHA BECK.

to

aggravated assault, a third degree felony ... in violation of title 76, chapter 5, section 103, Utah Code Annotated 1953, as amended, in that the defendant, DIXIE L. KIRGAN, a party to the offense, assaulted TRISHA BECK, by attempting to do bodily injury to TRISHA BECK with unlawful force or violence, *or by such means or force likely to produce death or serious bodily injury,* and/or intentionally caused serious bodily injury to TRISHA BECK.

(Emphasis added to show amended language.) Defendant acknowledges that the court may permit an information to be amended at any time before verdict if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. *See* U.C.A., 1953, § 77-35-4 (1982 ed.). She claims to have been substantially prejudiced by the amendment, in that the original information required an intentional act, whereas the amended information provided only unlawful force likely to produce death or serious bodily injury. As a result, continues her argument, the State successfully removed any requirement of "intent" by defendant and was put to its proof for a lesser degree of culpability. She also claims that the amended information was not signed and sealed by the court and

therefore failed to confer jurisdiction upon it. We do not address this latter point, as it is first raised on appeal. *State v. Tucker,* 709 P.2d 313 (1985).

■ The trial court must determine if a defendant was misled or surprised and therefore prejudiced by an amended information. *State v. Brisebois,* 39 Wash.App. 156, 692 P.2d 842 (1984). A variance between an information and the proof will be considered immaterial in a case in which it appears that the defendant's right to notice and fair opportunity to defend have not been infringed and the record is such as to protect the defendant against another prosecution for the same offense. *State v. Strand,* Utah, 674 P.2d 109 (1983). That test is met here, where defendant was charged under the given statute and was therefore put on notice as to every element of the offense against which she would be required to defend. Defendant's meticulously drawn trial brief is sufficient proof that she was not misled or surprised. Defendant there argued that she was not guilty of aggravated assault because she did not use a deadly weapon or such means or force likely to produce death or serious bodily injury (the language added in the amended information) and because she did not act intentionally, knowingly, or recklessly (addressing the two lesser degrees of culpability against which defendant now says she was not prepared to defend).

■ Where the information charged a defendant under the given statute, this Court has previously stated that a subsequent amendment of the information did not change the basic charge to some other charge. *State v. Peterson,* Utah, 681 P.2d 1210 (1984). It is true that the language in the amended information places the *mens rea* of intent alternatively in the conjunctive or disjunctive. It is also true that the language of simple assault (attempting to do bodily injury with unlawful force or violence) is stated as an alternative to language defining the *actus reus* of aggravated assault (such means or force likely to produce death or serious bodily injury). The possibility therefore existed to convict

defendant of aggravated assault for an act that constituted no more than simple assault. Here, however, the trial court convicted defendant as she was charged under the original information and thus rendered a potentially prejudicial error harmless.

The judgment is affirmed.