[No. 24713-1-I. Division One. January 21, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. JAY C. NEWMAN, JR., *Appellant*.

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

COLEMAN, J. — Jay Newman, Jr., appeals the judgment and sentence entered against him for five counts of first degree statutory rape. He contends that the trial court erred by allowing the State to orally amend the information to expand the charging periods, by failing to compel the State to elect the acts that formed the basis of each count, and by refusing to allow him to use a taped interview of the victims as evidence. We affirm.

Newman was charged by information with five counts of statutory rape involving his two granddaughters, M (about 5 years old at the time of the alleged abuse)[1] and R (about 3 years old at the time of the alleged abuse). The victim and charging period in each count were as follows:

Count 1 (R): June 1, 1986, through September 1, 1986.
Count 2 (M): June 1, 1986, through August 1, 1986.
Count 3 (M): March 1, 1986, through June 1, 1986.
Count 4 (M): March 1, 1986, through June 1, 1986.
Count 5 (R): March 1, 1986, through June 1, 1986.

---

[1] M had previously been sexually abused by Marcus Newman, Jay Newman's son, who occasionally baby-sat the girls during 1986 and 1987.

Before trial several people, including the two girls and their aunt, Kristi Newman, testified at a child hearsay hearing. Kristi testified that the girls had confided in her about various incidents of sexual abuse. On December 12, 1988, she taped the conversations she had with the girls, explaining that she did so in order to preserve what the girls said and to avoid the pain of having to tell the girls' parents each detail that the girls told her. Kristi also testified at the hearing that she occasionally stopped the tape recorder while the girls talked to her and then turned it back on for the girls to repeat what they had said.

After the testimony, the trial court ruled that both girls' statements were reliable and admissible at trial. However, the court excluded the tape-recorded conversation as evidence because Kristi's leading questions and the unrecorded intervals made the tape unreliable.

Following the hearing, the State moved to amend the charging periods in each count of the information, expanding counts 1 and 2 to June 1, 1986, through September 30, 1986, and counts 3, 4, and 5 to January 1, 1986, through July 31, 1986. The court approved the amendments over defense counsel's objection and stated that they would "deal with it when we go to the jury". In addition, the court denied the defense counsel's motion to compel the State to elect the acts it would rely upon for each count.

At trial, the testimony showed that from mid-February 1986 through mid-June 1986, Raone Ferrerra (Jay's daughter and the girls' aunt) lived in Edmonds, Washington, on 83rd Avenue near Jay and his wife. While Raone lived there, she baby-sat R and M while their mother worked afternoons. In July 1986 R and M and their family moved to an apartment on 83rd Avenue and lived there through March 1987. That apartment was beneath the apartment of Kristi Newman and her husband.

M and R both testified at trial. M testified that during the time Raone baby-sat the two girls, her grandfather approached her on four different occasions on the playground near Raone's apartment and took her to his

apartment. M differentiated each occasion by what happened to her in her grandfather's home: on three occasions M's grandfather put his penis or some object inside her vagina and once he made her pose nude while he photographed her.

M also testified that while she and her family lived downstairs from Kristi another incident of abuse had occurred. Marcus had been baby-sitting the girls and directed them to go into Kristi's home with their grandfather. M testified that while her grandfather and she were in the upstairs bathroom, he "stuck his private" into her. Marcus and R were in the downstairs bathroom. When M later went downstairs, Marcus then "did the same thing" to her that her grandfather had done. M later told her older brothers what had happened and they fought with Marcus.

R testified that during the time that Raone baby-sat, her grandfather approached her on the playground and took her to his apartment. While she was there, her grandfather put his penis in her vagina. She said that her grandfather had touched her more than once while she was at his home.

In addition, R testified that she recalled the day that her brothers fought with Marcus. It was the same day she and her grandfather had been in a bathroom at Kristi's house and her grandfather touched her, as she stated, "[i]n my bottom . . . the bottom part, the back one." She testified that she felt something go inside of her.

Kristi's testimony was consistent with the girls' statements. R had told Kristi that her grandfather had touched her private parts and "had put his private part into her private part just like Marcus." Kristi asked R when that had occurred and, as Kristi testified,

> [R] said when Marcus was baby-sitting, Grandpa came over and Marcus took her in the downstairs bathroom and Grandpa took [M] in the upstairs bathroom and then [Grandpa and Marcus] traded places.[2]

---

[2]Kristi reported this to R's mother, Maureen, who took R to see Candy Ashbrook, a counselor at a sexual assault center, on October 13, 1988. Shortly thereafter, Maureen notified the police about R's statements, and Officer Holmes began investigating the matter.

In addition, R told Kristi that during the time Raone baby-sat the girls, her grandfather had "put his hands down her pants and put his finger inside of her" while she had been outside in the playground near the apartment complex.

M informed Kristi that there had been times when her grandfather had forced her to engage in oral sex with him. M also said that on between 5 or 10 different occasions, her grandfather would take her into the bathroom and lock the door, make her undress, and "put his private part inside of her". The girls made those statements to Kristi before she taped the conversation with them on December 12.

Officer Holmes interviewed both girls several times before Kristi made the tape. The statements R and M gave to Officer Holmes were comparable to those that they made to Kristi. Ashbrook, the interviewer from the sexual assault center, also testified about the statements R and M had made to her, which were generally consistent with what they told Kristi and Officer Holmes. Jay Newman denied that he had ever touched the girls.

The following paragraph was included in the jury instructions for each of the five counts:

> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. For you to return a verdict of guilty, all twelve jurors must agree that the same incident of sexual contact has been proved beyond a reasonable doubt.

The jury returned a verdict of guilty on all counts, and a judgment was entered accordingly. Newman appeals.

We first address whether a defendant's right to receive a written charging document has been violated when, over the defendant's objection, the trial court grants the prosecutor's oral motion to amend the information by expanding the original charging periods and the defendant does not request a copy of a written amended information. Newman maintains that his constitutional right to receive a written charging document was violated when the court

allowed the prosecutor to orally amend the charging periods for each count in the information. Newman cites article 1, section 22 of the Washington State Constitution as his authority, which reads in pertinent part: "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, [and] to have a copy thereof[.]"

Three Washington opinions have addressed this issue. In the earliest case, *State v. Carr*, 97 Wn.2d 436, 645 P.2d 1098 (1982), the trial court allowed the prosecutor to orally amend the information by replacing the crime initially charged (unlawful *intra*state transportation) with an entirely different crime (unlawful *inter*state transportation). The trial court made a written note of the amendment on the complaint and read the text of the pertinent statute to the defendant. *Carr*, at 438. However, the court denied the defendant's request for a copy of the amended complaint. *Carr*, at 438. On appeal, the Supreme Court held that when the defendant requested a copy of an orally amended criminal complaint and the trial court refused that request, the defendant's due process rights were violated. *Carr*, at 441.

A subsequent opinion, however, held that when a defendant fails to request a copy of an amended information and the amendment merely changes the dates of the original crime charged without charging a new crime, the defendant waives the right to receive a copy of the amended information. *State v. Brisebois*, 39 Wn. App. 156, 162, 692 P.2d 842 (1984), *review denied*, 103 Wn.2d 1023 (1985). In that case, the State had charged the defendant with committing first degree theft/welfare fraud in September 1979 but moved to amend the charging period to September 1977 through October 1980. Because the defendant had been alerted through discovery that the State suspected the defendant of wrongful conduct occurring before 1979, the trial court found no prejudice and granted the motion to amend. *Brisebois*, at 159.

The appellate court affirmed, distinguishing *Carr* because Brisebois had not requested a copy of the amended information as Carr had and because the amended charging period did not charge Brisebois with a different crime, as the amendment in *Carr* had. *Brisebois*, at 162. The court also determined that Brisebois was not prejudiced by the amended information because it did not require Brisebois to defend against any additional allegations or to rebut additional testimony. *Brisebois*, at 163.

Neither party cites the third case that has considered this issue. In *State v. Baker*, 48 Wn. App. 222, 738 P.2d 327, *review denied*, 108 Wn.2d 1033 (1987), the defendant received a misdemeanor citation charging her with theft in the third degree from F.W. Woolworth. She was later charged for the same crime by information, but "the Bon Marché" was erroneously named as the location of the theft. Before trial the court granted the State's motion to amend the information to correct the store name. *Baker*, at 223. The defense counsel objected to the oral amendment and requested a written copy of the amended information. The court denied the request, finding that it was sufficient for the original information to have been filed with the court and properly served upon the defendant. *Baker*, at 224.

On appeal the court affirmed, finding that Baker's situation was more akin to *Brisebois* than to *Carr*, despite the fact that Baker had specifically requested a copy of the amended information. The court reasoned that "the concern over potential error rests with the substance of the amendment, rather than with the formality of providing a copy." *Baker*, at 225. It also noted, in dictum, that the amended charging period in *Brisebois* was merely a technical change and that neither Brisebois nor Baker could claim they had not been apprised of the nature of the respective crimes with which they were charged. *Baker*, at 225. The court held that if any error had occurred by failing to give Baker a copy of the amended information, that error did not prejudice her substantial rights and was therefore harmless. *Baker*, at 225.

██ In the present case, Newman was notified orally of the amended charging period. The amendment did not charge Newman with a new crime, but only expanded the charging period for each of the five counts of statutory rape, the type of change which *Baker* labeled as merely "technical". *Baker*, at 225. Because he never requested a written copy of the amended information, Newman waived his right to receive the amended copy. *Brisebois*, at 162.

Moreover, Newman does not argue that he was prejudiced by the amendment (*see* CrR 2.1(e)),[3] and fails to identify any evidence in the record that he was misled or surprised by the amendment. *See Brisebois*, at 163 ("In evaluating prejudice, the court must determine if the defendant was misled or surprised.") Thus, Newman failed to meet his burden of showing prejudice, *see Brisebois*, at 162, and we find no constitutional error.[4]

The second issue Newman raises is whether the trial court erred by failing to require the State to elect the specific acts of alleged sexual misconduct upon which it would rely for each count of the information. Newman argues that because the evidence at trial included testimony of incidents that occurred during "an extended period of time", he was denied a fair trial by the court's failure to require the State to elect specific acts.

██ In Washington,

> a defendant can only be convicted when a unanimous jury concludes that the criminal act charged in the information has been committed. In *multiple acts* cases where several acts are alleged, any one of which could constitute the crime charged, the jury must be unanimous as to which act or incident constitutes the crime. In such cases, Washington law requires that

---

[3]CrR 2.1(e) provides:

"The court may permit any information or bill of particulars to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced."

[4]Newman also cites *Orting v. Rucshner*, 66 Wn.2d 732, 404 P.2d 983 (1965) to assert that the trial court did not have jurisdiction over the matter because a written copy of the amended information was not filed with the court. However, the facts of *Orting* are distinguishable because, in that case, no charging document at all was filed with the court.

*either* the State elect the act upon which it will rely for conviction, or that the trial court instruct the jury that all jurors must agree that the same underlying criminal act has been proven beyond a reasonable doubt.

(Footnotes omitted.) *State v. Noltie*, 116 Wn.2d 831, 842-43, 809 P.2d 190 (1991). *See also State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *holding modified on other grounds in State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988).

In the present case, the State did not elect the particular acts it relied upon for each count, but the jury was read unanimity instructions that were substantially the same as the unanimity instruction approved in *Noltie*, a "multiple acts" case in which the defendant was charged with statutory rape and indecent liberties.[5] Moreover, the two counts involving R were distinguished in the instructions, as were the three counts involving M.[6] Thus, the requirements of *Noltie* and *Petrich* were met. Nonetheless, Newman contends that he was denied a fair trial for four reasons, all of which hinge upon the State's failure to elect specific acts.

■ 1. Double Jeopardy. Newman contends that the State's failure to elect specific acts may place him at risk of being tried and convicted in some future trial for the same acts charged in this case. To the extent that Newman suggests that the information was vague, a timely request for a bill of particulars would have alleviated any such vagueness. *Noltie*, at 844 (if an information is vague as to matters

---

[5] The *Noltie* instruction reads:

"Evidence has been introduced of alleged multiple acts of sexual intercourse between [M] and the defendant.

"Although the twelve of you need not agree that all of the acts have been proved, to convict the defendant of Count I or Count II you must unanimously agree that at least one separate act of sexual intercourse pertaining to each count has been proved beyond a reasonable doubt." *Noltie*, at 843.

[6] Counts 1 and 5 involved R, and the instruction pertaining to count 5 stated as one of the elements: "That on or about the dates of January 1, 1986 through July 31, 1986, the defendant engaged in sexual intercourse with [R], by a separate and distinct act from Count 1[.]" The same kind of distinction was drawn for the three counts involving M.

other than the elements of the crime, the defendant may request a bill of particulars to correct the defect). Newman made no such request.

■ As to Newman's double jeopardy argument, we find it is without merit. A defendant who is charged with a multiple act information is protected from the threat of double jeopardy when, as in this case, the evidence is sufficiently specific as to each of the various acts charged within the alleged time frames. This result inevitably follows whenever the State is permitted to proceed on a multiple acts information and a unanimity instruction is given in lieu of the State's election of specific acts. When that situation occurs and the jury returns a guilty verdict, the State is foreclosed from a later attempt to reprosecute those same charges. If the State should make such an attempt at reprosecution, the defendant can readily defend against the subsequent charges by pointing to the previous information and the facts and evidence in the record upon which the conviction was based. Because the evidence in this case is sufficiently definite as to each of the acts charged, Newman is adequately protected from any risk of double jeopardy.

2. Sufficiency of the Evidence. Newman next contends that because the State did not elect the particular acts associated with each count of the information, there is no way for Newman to challenge the sufficiency of the evidence. For support, Newman cites *People v. Creighton*, 57 Cal. App. 3d 314, 129 Cal. Rptr. 249 (1976), *overruled on other grounds in People v. Thomas*, 20 Cal. 3d 457, 573 P.2d 433, 143 Cal. Rptr. 215 (1978), in which the defendant was charged with multiple acts of sexual misconduct with two victims. That court held that although substantial evidence of crimes had been presented, there was insufficient evidence as to an individual, specific crime. *Creighton*, at 321.

■ In this case, however, the testimony clearly delineated specific and distinct incidents of sexual abuse to each girl and during the specified charging periods. A reasonable trier of fact could single out specific incidents of sexual abuse as to each count charged. Thus, the fact that the

State did not elect particular acts for each count did not deny Newman a fair trial.

3. Inability To Prepare an Alibi Defense. Newman's third contention is that he was prevented from constructing an alibi defense because the State was not required to elect the specific acts. However, when Newman's counsel moved to require the State to elect, he did not suggest to the trial court that he would be precluded from preparing an alibi. Instead, he argued that requiring an election would save time and focus the jury on the issues. It was only when he objected to the amended charging periods that he said the "what, when, where, and how" of the offenses would be difficult to ascertain.

■ Having failed to offer the court any specific indication as to how he would be hampered at presenting an alibi, Newman has failed to preserve that argument for review. *See Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). Moreover, as previously discussed, the information was sufficient to apprise Newman of the specific charges against him and the time frame in which they occurred. In addition, to the extent that Newman suggests that the information was vague, any such vagueness could have been cured by requesting a bill of particulars. Having failed to make such a request, Newman has waived the right to raise that contention on appeal. *See Noltie*, at 845.

4. Inability To Exclude Irrelevant and Prejudicial Evidence. The fourth argument Newman makes is that the State's failure to elect particular acts precluded him from moving the court to exclude irrelevant and prejudicial evidence because it was impossible for the defense counsel to determine what evidence was, in fact, irrelevant and prejudicial. However, Newman neither identifies what evidence he would have tried to exclude as irrelevant nor explains why certain relevant evidence found in Jay's home should have been excluded as unduly prejudicial. Newman offers no cite to the record indicating that he raised that argument at trial and, thus, he is precluded from raising it on appeal. *See State v. Thompson*, 55 Wn. App. 888, 892, 781

P.2d 501 (1989) (appellate courts will not review an issue, theory, or argument not presented at trial; purpose of that rule is to allow trial court to correct any error). In sum, we find no error resulted from the State's decision not to elect specific acts of misconduct.

Finally, we decide whether the trial court deprived Newman of his right to confront and cross-examine witnesses by excluding all evidence regarding the taped conversation between the two girls and their aunt. Newman contends that the trial court erred by excluding the taped conversation between Kristi and the girls because it contained evidence of the girls' prior inconsistent statements. He also argues that the unreliable nature of the recorded conversation (*i.e.*, Kristi's use of leading questions and comments like "good" and "you are a brave girl") was probative for showing how that conversation could have affected the girls' subsequent statements and trial testimony.

ER 403 governs the exclusion of relevant evidence and reads:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Further, it is within the sound discretion of the trial court to decide whether a witness's tape-recorded statement and an authenticated transcript of its contents may be admitted as exhibits and reviewed by the jury. *State v. Frazier*, 99 Wn.2d 180, 188-89, 661 P.2d 126 (1983).

Here, in the exercise of its discretion, the trial court concluded that the unreliable nature of the way the recorded conversation was produced required its exclusion. The court noted, in so deciding, that numerous other statements by the girls were available for the defendant's use in impeaching their trial testimony. Moreover, the girls' recorded statements were statements they had previously made to Kristi, Officer Holmes, or Candy Ashbrook. It cannot be said, therefore, that Kristi's comments during the taping imper-

missibly influenced the girls' testimony. Hence, it was not an abuse of discretion to exclude the tape as evidence.

The judgment and sentence of the trial court are affirmed.

FORREST and KENNEDY, JJ., concur.

Review denied at 119 Wn.2d 1002 (1992).