IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>            Respondent,<br><br>        v.<br><br>ROBERTO PESTAÑA CRUZ,<br><br>            Appellant. | No. 83495-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, J. — Roberto Pestaña Cruz[1] appeals a jury conviction for one count of rape of a child in the first degree and two counts of child molestation in the first degree, challenging the sufficiency of the evidence and assigning error based on a Petrich[2] instruction and allegations of prosecutorial misconduct. Because sufficient evidence of separate and distinct acts was introduced, which

---

[1] The trial court record sets out the defendant's last name with and without a hyphen, but also demonstrates that he signed the judgment and sentence without a hyphen, only using Pestaña. As hyphens are not associated with traditional naming conventions in Spanish-speaking communities, we refer to him by his complete unhyphenated last name.

Further, at oral argument before this court, defense counsel confirmed the pronunciation of the defendant's name. On that basis, and because the record notes his use of a Spanish interpreter in the trial court, we utilize the proper spelling of Pestaña based on the Spanish language alphabet. Wash. Court of Appeals oral argument, State v. Pestaña Cruz, No. 83495-9-I (Nov. 8, 2022), at 0 min., 25 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2022111128/?eventID=2022111128.

[2] State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984), abrogated on other grounds by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988).

supported each count, the jury was properly instructed under <u>Petrich</u> and its progeny. We further conclude the prosecutor did not commit misconduct in closing argument. Accordingly, we affirm.

FACTS

On July 1, 2021, the State charged Roberto Pestaña Cruz with one count of rape of a child in the first degree and one count of child molestation in the first degree, both domestic violence offenses. The charges were based on acts alleged to have occurred between January 24, 2020 and May 22, 2021. The named victim in each count was Pestaña Cruz's daughter, E, who was less than twelve years old at the time. Two months later, the State filed an amended information adding two more counts, alleged to have occurred within the same charging period: one of rape of a child in the first degree, and one of child molestation in the first degree.

Pestaña Cruz and I.EC. were married in 2014 and have five children together, three girls and two boys. Their eldest daughter, E, was 9 years old at the time of the trial. Both parents worked outside the home and shared in the responsibilities of caring for the children. On May 22, 2021, I.EC. took a three-day trip to Atlanta. I.EC. testified that on June 1, 2021 her son, D, came into her room and told her that he had seen Pestaña Cruz doing things to E. I.EC. immediately spoke with E who confirmed that Pestaña Cruz had forced her to do things she did not want to, and went on to describe specific acts of molestation and digital penetration. After E's disclosure, I.EC. told her son RC to come into the room and then called the police.

E was reluctant to talk about the alleged incidents, but participated in a forensic examination by a pediatric nurse practitioner, and a forensic interview, in June 2021. There were noted vagaries and inconsistencies in her recounting of the different incidents, but E ultimately confirmed during her trial testimony that Pestaña Cruz had touched her multiple times. E also explained that she did not tell her mom because she was scared that her mom wouldn't believe her.

The pediatric nurse practitioner who conducted the forensic examination on E testified at trial and read a partial transcript of her questions and E's answers into the record. The medical record of the exam showed that E had offered detailed descriptions of both incidents involving exterior touching of genitals and penetrative acts. E recounted an incident when Pestaña Cruz performed oral sex on her and another when he forced her to touch his genitals. The child forensic interviewer, Gina Coslett, who had questioned E in June 2021 also testified. During the interview, Coslett had questioned E about the "last time," "first time," "other times," and "the worst time" she was touched by Pestaña Cruz, and E provided detailed and distinct answers in response to each inquiry. The interview Coslett conducted with E was recorded and later played for the jury.

Before closing arguments, the parties reviewed the jury instructions. Pestaña Cruz objected to the Petrich and "to convict" instructions and requested that the trial court require the State to make an election of the specific acts underlying each count. The trial court overruled the objection. The jury found Pestaña Cruz guilty of count 1, rape of a child in the first degree, count 3, child

molestation in the first degree, and count 4, child molestation in the first degree. Pestaña Cruz timely appealed.

ANALYSIS

Pestaña Cruz argues that the State failed to present sufficient evidence because "some of the acts discussed in the testimony would not support either a rape or a molestation conviction and the State refused to elect the acts it relied on for conviction." The assignments of error in his opening brief focus on election of acts and error in the use of a Petrich instruction, but the analysis weaves in general sufficiency review and, at oral argument before this court, defense counsel urged this panel to apply that standard.[3] Pestaña Cruz further asserts that the prosecutor's comments in closing argument constituted misconduct.

Pestaña Cruz also raised a new argument for the first time in his reply brief, asserting that "the trial prosecutor told the jurors they could aggregate the allegations to support the State's burden of proof." This assertion became a focal point of the defense presentation at oral argument before this court.[4] As a preliminary matter, RAP 10.3(c) limits a reply brief to a "response to the issues in the brief to which the reply brief is directed." Generally, this court "will not review an issue raised and argued for the first time in a reply brief." Matter of Rhem, 188 Wn.2d 321, 327, 394 P.3d 367 (2017). Finding no compelling reason to do so

---

[3] Wash. Court of Appeals oral argument, State v. Pestaña Cruz, No. 83495-9-I (Nov. 8, 2022), at 3 min., 30 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2022111128/?eventID=2022111128.

[4] Wash. Court of Appeals oral argument, State v. Pestaña Cruz, No. 83495-9-I (Nov. 8, 2022), at 2 min., 20 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2022111128/?eventID=2022111128.

here, we decline to entertain this argument which, further, is not supported by the record.[5]

I.      Sufficiency of the Evidence

The right to due process, under both the federal and state constitutions, requires that the State prove each element of the offense beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017). A sufficiency challenge is intertwined with the ultimate question of whether the conviction violated the defendant's right to due process, which would occur if there was insufficient evidence to satisfy the State's burden. Id. at 750. Sufficiency of the evidence is subject to de novo review. State v. Berg, 181 Wn.2d 857, 867, 337 P.3d 310 (2014).

On review, the "critical inquiry" is "not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Viewing the evidence in the light most favorable to the State, this court asks whether "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" Id. at 319. When sufficiency is challenged, "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted

---

[5] The defense asserts that the prosecutor's statement in closing, "It happened so much, and that is evidence that you can consider just like any other evidence that was admitted" invited the jury to convict based on aggregation of the evidence presented at trial. However, this proposition is simply not borne out upon review of the State's argument as a whole, which is required in claims of prosecutorial misconduct. Three paragraphs before this purportedly inappropriate invitation to aggregate, the State expressly referred to instruction 14, the Petrich instruction, and explained "what that instruction is telling you is you do have to all agree on what the act is for sexual intercourse or for sexual contact for any one count."

most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Such a challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. In determining sufficiency, circumstantial evidence is no less reliable than direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). The reviewing court "defer[s] to the jury's evaluation of witness credibility, resolution of testimony in conflict, and weight and persuasiveness of the evidence. State v. Bass, 18 Wn. App. 2d 760, 782, 491 P.3d 988 (2021), review denied, 198 Wn.2d 1034, 501 P.3d 148 (2022).

### A. Election of Acts or Petrich Instruction

In Washington, a criminal defendant may only be convicted upon a unanimous jury verdict. State v. Noltie, 116 Wn.2d 831, 842, 809 P.2d 190 (1991). In a "multiple acts" case, where several acts are alleged and each one could individually constitute the charged offense, "the jury must be unanimous as to which act or incident constitutes the crime." Id. at 842-43. In order to ensure jury unanimity in such cases, our Supreme Court established a rule in State v. Workman which required the State to make an election:

> In case of conviction, where the evidence tends to show two separate commissions of the crime, unless there is an election, it would be impossible to know that either offense was proved to the satisfaction of all of the jurors, beyond a reasonable doubt. The verdict could not be conclusive on this question, since some of the jurors might believe that one of the offenses was so proved, and the other jurors wholly disbelieve it, but be just as firmly convinced that the other offense was so proved. The greater the number of offenses in evidence, the greater the possibility, or even probability, that all of the jurors may never have agreed as to the proof of any single one of them. The true rule seems to be that, while evidence of separate commissions

of the offense may be admitted as tending to prove the commission of the specific act relied upon, the proper course in such a case, after the evidence is in, is to require the state to elect which of such acts is relied upon for a conviction.

66 Wash. 292, 294-95, 119 P. 751 (1911).

Subsequently, the Court modified the Workman rule, providing an alternative to the election requirement. State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). In Petrich, our Supreme Court explained that in multiple acts cases, while jury unanimity will be ensured by the State making an election, it may also be secured by the court providing a proper jury instruction. Id. Accordingly, the State must either elect the specific act it relies upon for each conviction or the trial court must instruct the jury that all jurors must agree that the same underlying criminal act has been proven beyond a reasonable doubt for each separate count. Id.

This court later reiterated in State v. Hayes that, where multiple counts are alleged to have taken place within the same charging period, "the State need not elect particular acts associated with each count so long as the evidence 'clearly delineate[s] specific and distinct incidents of sexual abuse' during the charging periods." 81 Wn. App. 425, 431, 914 P.2d 788 (1996) (quoting State v. Newman, 63 Wn. App. 841, 851, 822 P.2d 308 (1992)). Furthermore, the trial court has a duty to instruct the jury that they "must be unanimous as to which act constitutes the count charged and that they are to find 'separate and distinct acts' for each count when the counts are identically charged." Hayes, 81 Wn. App. at 431 (quoting Noltie, 116 Wn.2d at 846).

B.    Generic Testimony

Even generic testimony, without a specific election by the State, can be sufficient to sustain convictions on multiple counts of the same type of crime. Hayes, 81 Wn. App. at 438.  When a conviction stands on generic testimony alone, we apply a three-part test to determine sufficiency:

> First, the alleged victim must describe the kind of act or acts with sufficient specificity to allow the trier of fact to determine what offense, if any, has been committed.  Second, the alleged victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged by the prosecution.  Third, the alleged victim must be able to describe the general time period in which the acts occurred. The trier of fact must determine whether the testimony of the alleged victim is credible on these basic points.

Id.  While Pestaña Cruz argues in briefing that E's testimony was generic and failed to pass the Hayes test, review of the trial record leads us to the opposite conclusion.  E's description of the events, particularly following the "last, first, other, and worst" framework from the forensic interview questions, delineates multiple distinct instances of sexual abuse with sufficient specificity to support each count. Because this case does not involve generic testimony, the Hayes test is inapplicable here.

C.    Sufficiency of Each Count

Pestaña Cruz proceeded to trial on two counts of rape of a child in the first degree and two counts of child molestation in the first degree.  All four counts were based on acts alleged to have occurred within the time period set out in the amended information, "from on or about the 24th day of January, 2020 to on or

about the 22nd day of May, 2021," and alleged as domestic violence offenses based on the family relationship.

Prior to closing arguments, the parties reviewed the State's proposed jury instructions. Pestaña Cruz raised concerns about the "to convict" instructions stating, "if they're going to say that the jury should get to decide which one is Count [1], and as long as they all agree that this is the thing that they think happened, then I will have an objection." In response, the State asserted that "the Petrich Instruction and the fact that the instruction for each count says — includes in there that each one refers to an act separate and distinct from another count, I think that satisfies the legal requirements." Pestaña Cruz then formally objected, but the trial court overruled the objection.

The Petrich instruction provided to the jury was set out as Jury Instruction 14, and stated:

> The State alleges that the defendant committed acts of first degree rape of a child and first degree child molestation on multiple occasions. To convict the defendant on any count of first degree rape of a child or first degree child molestation, one particular act of first degree rape of a child or first degree child molestation must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of first degree rape of a child and first degree child molestation.

Additionally, the jury was separately instructed that, in order to convict the defendant on any given count, the underlying act must be "separate and distinct" from the other charged counts.

The jury convicted Pestaña Cruz of count 1, rape of a child in the first degree, and counts 3 and 4, both child molestation in the first degree, all of which

were designated as crimes of domestic violence. He was acquitted of count 2, rape of a child in the first degree.

### 1. Count 1

Pestaña Cruz argues that the evidence was insufficient to support a conviction for rape of a child in the first degree as set out in count 1 because E's testimony was conflicting and "[s]everal of her allegations, if relied on by the jury, would not support a rape charge at all." The State counters that the jury was properly instructed and there is sufficient evidence to sustain the conviction. The State is correct.

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. The only disputed element of this count, as set out in the "to convict" instruction, is whether the defendant had sexual intercourse with E. The jury instructions defined sexual intercourse to include "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another."[6]

The State presented a recording of a child forensic interview in which E explained in detail an occasion, "the other time," where Pestaña Cruz forced her onto the bed and performed oral sex on her. On the basis of this evidence, a rational trier of fact could have found that Pestaña Cruz had sexual intercourse with E. This evidence supports the conviction for rape of a child in the first degree

---

[6] This definition contained in jury instruction 8 is consistent with the statutory definition set out in RCW 9A.44.010(14)(c).

contained in count 1. The fact that E also described other acts, both in the forensic interview and in her live testimony, that legally do not meet the statutory elements of the charged crimes, does not invalidate the evidence which does properly satisfy those elements.

### 2.      Counts 3 and 4

As to the counts of child molestation in the first degree set out in the amended information, Pestaña Cruz argues that "if the prosecutor could not identify at least one distinct act for each count, it was equally impossible for the jury to identify a particular act." Pestaña Cruz's argument is misguided, rests on its unsupported claim of an aggregation argument by the State, and fails to apply the proper legal standards.

Pestaña Cruz relies on two cases to argue that E's testimony was insufficient to support the two molestation charges, counts 3 and 4. As both cases address the sufficiency of generic testimony, neither impacts our analysis. In State v. Edwards, the State claimed that the trial court erred in vacating a conviction for insufficient evidence of separate and distinct acts. 171 Wn. App. 379, 401, 294 P.3d 708 (2012). The State charged Edwards with two counts of child molestation in the first degree, but the court vacated one of the counts because of "insufficient evidence of juror unanimity." Id. at 402. Although the victim testified to one specific incident of molestation, which was sufficient to support one count, her following testimony was generic as she simply asserted the same thing happened "10 or 15" other times. Id. at 403. The State presented no evidence showing whether any of those other "10 or 15" acts occurred within the charging period. Id. Accordingly,

this court affirmed the trial court's decision because the victim's generic testimony failed to differentiate between specific and distinct incidents of molestation that occurred during the charging period. Id. at 402-03.

Similarly, in State v. Jensen, Division Two of this court held there was insufficient evidence supporting one count of child molestation in the first degree. 125 Wn. App. 319, 323, 104 P.3d 717 (2005). Jensen was convicted of three counts of child molestation, and, on appeal, he argued the evidence was insufficient for each count because the State had not proven that the acts occurred within the charging period. Id. at 325. Although the victim testified to two specific incidents that took place during the charging period, which qualified as molestation, her subsequent testimony was generic, as she stated that, "Jensen entered her room at night on two other occasions." Id. at 328. Because the generic testimony regarding the "two other occasions" failed to describe the acts with enough specificity for the jury to convict, this court reversed the conviction for one of the counts of child molestation. Id.

Unlike Jensen and Edwards, which both addressed whether generic testimony was sufficient to support a conviction, this case does not raise such a question. Although E testified that some of the acts occurred repeatedly, she provided detailed descriptions of separate and distinct occurrences within the charging period which supported both counts of molestation. Again, because this is not a generic testimony case, we apply a standard sufficiency test rather than engaging in the Hayes analysis.

Viewing the evidence in the light most favorable to the State, the question is whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. To convict Pestaña Cruz of child molestation in the first degree, the State was required to prove that he had "sexual contact" with E during the charging period. "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party."[7]

In the child forensic interview, E described various incidents of sexual contact which sufficiently support counts 3 and 4. As the transcription provides, E spoke of multiple instances that were categorized during the interview as follows: (1) the "last time," (2) the "first time," (3) the "other times," and (4) the "worst time." When asked about the very first incident, E stated that she was laying down and Pestaña Cruz rubbed his genitals on her body. E explained Pestaña Cruz "just rubbed it on top" before "quickly" moving to the couch when her mom returned from work. E described another incident in which Pestaña Cruz used her hand to masturbate until he ejaculated. Afterwards, E stated that Pestaña Cruz told her to "go wash [her hand]" and "then he stopped." Drawing all reasonable inferences in favor of the State and deferring to the jury's determination of E's credibility, this testimony is sufficient to support a conviction for each of the allegations of child molestation in the first degree as set out in counts 3 and 4. Again, the assertion on appeal that there was other testimony introduced that could not have legally

---

[7] Again, the definition provided in jury instruction 12 is consistent with the statutory definition contained in RCW 9A.44.010(13).

supported a conviction for child molestation in the first degree does not undermine the evidence of distinct acts which does satisfy the elements of the charges.

As Washington law does not require the State to elect a specific act upon which it will rely in multiple acts cases such as this, Pestaña Cruz's first three assignments of error are without merit. The trial court provided a Petrich instruction and the jury was further instructed that each specific act underlying the four counts alleged by the State must be separate and distinct from the others with regard to each "to convict" instruction. This was proper under our state's jurisprudence. Additionally, E's testimony provided sufficient evidence to support the convictions for counts 1, 3, and 4, as it delineated separate and distinct instances within the charging period. Because the jury was properly instructed and each conviction is supported by sufficient evidence, Pestaña Cruz's due process claims fail.

II.    Prosecutorial Misconduct

Pestaña Cruz next avers his conviction must be reversed due to prosecutorial misconduct. He contends comments made by the State during closing argument were improper as to (1) E's credibility as a witness, and (2), Pestaña Cruz's constitutional right to confront witnesses. In closing, the prosecutor made the following statement:

> Now, ultimately, you're going to fully, fairly, and carefully consider the evidence as you should in a case of this nature. And ultimately, when you will conclude that process, you consider the arguments of defense counsel, you're going to be left ultimately with the satisfaction that there is no reasonable explanation for a 9-year-old child to provide these details in the manner and timing in which she did to go through multiple interviews, to come talk to numerous

strangers, to come in here in front of her father and talk about these acts unless they really did occur.

"To prevail on a claim of prosecutorial misconduct, the defendant must establish 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). "To establish prejudice, the defendant must show a substantial likelihood that the error affected the jury verdict." State v. Molina, 16 Wn. App. 2d 908, 918, 485 P.3d 963 (2021). If defense counsel fails to timely object to the challenged comment, the objection is waived "'unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" Thorgerson, 172 Wn.2d at 442 (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). Pestaña Cruz's defense attorney did not object to this argument at trial; therefore, we apply the higher standard.

A.    Vouching for a Witness

A prosecutor may not personally vouch for the credibility of a witness, either by "'plac[ing] the prestige of the government behind a witness'" or by "'indicat[ing] that information not presented to the jury supports the witness's testimony.'" Molina, 16 Wn. App. 2d at 919 (quoting State v. Coleman, 155 Wn. App. 951, 957, 231 P.3d 212 (2010)). However, prosecutors do "have wide latitude to draw reasonable inferences from the evidence and to express those inferences to the

jury." State v. Markovich, 19 Wn. App. 2d 157, 170, 492 P.3d 206 (2021). This includes latitude to argue inferences based on "'evidence respecting the credibility of witnesses.'" State v. Lucas-Vicente, 22 Wn. App. 2d 212, 225, 510 P.3d 1006 (2022) (quoting Thorgerson, 172 Wn.2d at 448).

Here, the prosecutor argued a reasonable inference regarding E's credibility based on the evidence presented at trial. More critically, counsel did not object to this comment during closing argument. In analyzing this asserted error in his opening brief, despite citing Thorgerson, Pestaña Cruz does not engage with the heightened standard of review which applies in the absence of an objection. While he devotes several pages of his briefing to this issue, he fails to discuss prejudice, and does not even allege that an admonition or instruction from the court would not have neutralized the comment. However, we need not reach those steps of the test as the prosecutor's comments did not constitute improper vouching and, therefore, were not misconduct.

B.      Comment on the Right to Confrontation

It is impermissible for the State to take an action if it would "'unnecessarily 'chill' or penalize the assertion of a constitutional right and the State may not draw adverse inferences from the exercise of a constitutional right.'" State v. Gregory, 158 Wn.2d 759, 806, 147 P.3d 1201 (2006) (quoting State v. Rupe, 101 Wn.2d 664, 705, 683 P.2d 571 (1984)), overruled on other grounds by State v. W.R., Jr., 181 Wn.2d 757, 336 P.3d 1134 (2014). However, "not all arguments touching upon a defendant's constitutional rights are impermissible comments on the exercise of those rights," rather, an argument is improper if "'the prosecutor

- 16 -

manifestly intended the remarks to be a comment on that right.'" Id. at 806-07 (quoting State v. Crane, 116 Wn.2d 315, 331, 804 P.2d 10 (1991), abrogated on other grounds by In re Pers. Restraint of Andress, 147 Wn.2d 602, 56 P.3d 981 (2002)).

In State v. Jones, this court held that a prosecutor's comments that Jones was frustrated by not being able to see the reporting witness's testimony and "allud[ing] to the fact [the victim's] courtroom contact with Jones was so traumatic that she could not return to court," was "an impermissible" comment on "constitutionally protected behavior." 71 Wn. App. 798, 811-12, 863 P.2d 85 (1993). By contrast, in Gregory, our Supreme Court held that a prosecutor's question to a victim about how it felt to be cross-examined and comments that, "[The victim] would not have subjected herself to the trial process just to avenge a broken condom" was distinguishable from Jones because "the questioning and argument in this case focused on the *credibility* of the victim versus Gregory," and the statements "did not focus on Gregory's exercise of his constitutional rights to trial and to confront witnesses," but "focused on the credibility of the victim as compared to the credibility of the accused." 158 Wn.2d at 807-08.

Pestaña Cruz focuses on the following statement by the prosecutor in closing:

> there is no reasonable explanation for a 9-year-old child to provide these details in the manner and timing in which she did to go through multiple interviews, to come talk to numerous strangers, to come in here in front of her father and talk about these acts unless they really did occur.

(emphasis added). The State's comments here are more akin to those in <u>Gregory</u>. The prosecutor focused not on Pestaña Cruz's right to confront E, but on factors the jury could consider in its assessment of E's credibility. Furthermore, Pestaña Cruz again fails to directly argue prejudice or to otherwise address the heightened standard applied to this challenge in the absence of an objection. Ultimately, though, we conclude that the prosecutor's statement was not an improper comment on Pestaña Cruz's exercise of his right to confrontation, so it did not constitute misconduct.

Affirmed.

WE CONCUR:

Díaz, J.