[Nos. 47870-8, 48386-8, 48387-6, 48388-4, 48389-2, 48390-6. En Banc. January 20, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. INEZ HOLMES, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. ITA THOMAS AYSCUE, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. ROBBIE LEE BARRY, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. DIANE E. DUBER, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. DENISE McCRUTER, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. SCARLET W. TAYLOR, *Appellant.*

*James E. Sedney* of *Washington Appellate Defender Association,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Diane L. Clifford, Deputy,* for respondent.

DIMMICK, J.—Appellants were separately charged with theft in violation of the welfare fraud statute, RCW 74.08-.331.[1] In motions to dismiss each appellant argued that RCW 74.08.331 constitutes an unconstitutional delegation of legislative authority and is unconstitutionally vague. The motions to dismiss were denied and appellants were found guilty on stipulated facts. We consolidated the direct appeals and now affirm the six trial courts.

Appellants were found guilty on the following facts:

Each appellant applied for and received public assistance benefits under the Aid to Families with Dependent Children (AFDC) program. The standard AFDC application for assistance form signed by appellants recites that "I under-

---

[1]RCW 74.08.331 provides in pertinent part:

Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, or a wilful failure to promptly notify the county office in writing as required by law or any change in status in respect to resources or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which he is not entitled or greater public assistance than that to which he is justly entitled shall be guilty of grand larceny and upon conviction thereof shall be punished by imprisonment in the state penitentiary for not more than fifteen years.

The reference to "grand larceny" in RCW 74.08.331 was impliedly repealed and replaced with the term "theft" by RCW 9A.56.100. *See State v. Sass,* 94 Wn.2d 721, 620 P.2d 79 (1980). Accordingly, the punishment for welfare fraud, as for any other type of theft, now depends upon the value of the property stolen. *Sass.*

stand that I am required to report immediately to the local office any changes in my income, resources, or living arrangements" and that "I understand that the information reported in this declaration will be used to determine my eligibility for public assistance and the amount of benefits I will receive."

Each appellant, except Barry, became employed while receiving benefits and willfully failed to report this change of circumstance and the resulting income. On Barry's application for benefits, she willfully and falsely stated that her husband was not living with her and that he was not contributing money to the household. Barry repeated these false statements on subsequent eligibility forms.

As a result of the inaccurate information supplied by appellants, the Department of Social and Health Services (DSHS) paid each appellant more in AFDC benefits than he or she was lawfully entitled. The overpayments were: Holmes, an amount over $250 (the exact amount is not reflected in the record); Ayscue, $2,860.70; Barry, $2,181; Duber, $2,122.29; McCruter, $1,877.71; and Taylor, $1,812.03. Based on the amount of the overpayments, Holmes and Taylor were convicted of second degree theft and the remaining four appellants were convicted of first degree theft. Each was placed on probation and ordered to make restitution.

I

Appellants first contend that RCW 74.08.331 unconstitutionally delegates authority to DSHS to define an element of the offense. Appellants rely on certain language in *State v. Ermert*, 94 Wn.2d 839, 621 P.2d 121 (1980) in this regard. Ms. Ermert was charged with failing to report certain information as "required by law" under the statute. DSHS by regulation defined what disclosure fell within this requirement. This court held that it was unconstitutional to impose criminal liability on Ms. Ermert for her failure to comply with administrative, not statutory, disclosure requirements. We stated:

[I]f the disclosure "required by law" was not limited to statutorily created requirements, but extended to those promulgated from time to time by DSHS, the statute would unconstitutionally delegate to DSHS the authority to determine what is a felony crime under RCW 74.08-.331.

*Ermert,* at 846. We also stated that no "standards or safeguards have been contemplated or provided in RCW 74.08-.331 to justify delegation of the authority to *define crimes* to DSHS." *Ermert,* at 847.

The cases before us are clearly distinguishable. Appellants stipulated that they willfully failed to report income earned by themselves or by another person in the household. Appellants have therefore stipulated that they failed to comply with *statutory* disclosure requirements. The reference in *Ermert* to DSHS's lack of authority to define crimes deals only with the agency's power to add disclosure requirements by regulation and is therefore not controlling here.

Appellants next argue that because the gravamen of welfare fraud is obtaining greater public assistance than one is "justly entitled" to, and because DSHS establishes the standards for eligibility, DSHS in effect defines an element of the crime. They assert that DSHS's authority to do so was not properly delegated. We do not agree.

■ Legislative authority may constitutionally be delegated to an administrative body if (1) the Legislature provides standards defining generally what is to be done and what body is to accomplish it; and (2) procedural safeguards exist to control arbitrary administrative action. *Polygon Corp. v. Seattle,* 90 Wn.2d 59, 66, 578 P.2d 1309 (1978); *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 163–64, 500 P.2d 540 (1972). Contrary to appellants' contention, these requirements are equally applicable to criminal statutes. *See State v. Ermert, supra; In re Powell,* 92 Wn.2d 882, 891, 602 P.2d 711 (1979).

■ The applicable statutes indicate generally what is to

be done and who is to do it. For example, RCW 74.08.040[2] states that grants shall be awarded in accordance with standards established by DSHS. That statute also provides that in order to determine such standards, DSHS shall establish objective budgetary guidelines based on actual living cost studies which are to be revised annually. RCW 74.04.005(11)(g)[3] directs DSHS to fix by rule and regulation the ceiling value for individuals and family units for property and belongings. RCW 74.04.005(11)(g) also permits DSHS to adopt standards by rule and regulation which will exempt the home and personal property and belongings from consideration as available resources for purposes of eligibility.

Additionally, procedural safeguards have been established to guard against arbitrary administrative actions. RCW 74.08.090 specifically provides that rules and regulations promulgated by DSHS are to be filed in accordance with the administrative procedure act (APA) and copies are to be made available for public inspection. Judicial review is also available pursuant to the APA. RCW 74.08.080.

Appellants also contend that RCW 74.04.005(12) constitutes an unlawful delegation of legislative authority because in defining income the statute permits DSHS to promulgate regulations "consistent with federal requirements."[4] Appellants rely upon *In re Powell, supra* and *State v. Dougall,* 89 Wn.2d 118, 570 P.2d 135 (1977) in this regard.

The statutory scheme here, however, is quite different

---

[2]During the periods for which appellants were prosecuted, RCW 74.08.040 was in force. The statute, however, has since been repealed and replaced with RCW 74.08.041, which specifically declares the dollar amount of AFDC grants, based on family size. Laws of 1981, 1st Ex. Sess., ch. 6, § 10, effective July 1, 1981.

[3]RCW 74.04.005(11)(g) was also amended after the period for which the appellants were prosecuted. Laws of 1981, 1st Ex. Sess., ch. 6, § 1, effective July 1, 1981.

[4]This particular proviso was added to the statute by Laws of 1980, ch. 84, § 1, effective June 12, 1980. Appellant Taylor's overpayments ended in January 1980; accordingly, as noted in appellants' brief, this particular alleged statutory defect has no bearing on Taylor's conviction.

from those invalidated in *Powell* and *Dougall*. In *Dougall*, we struck down, as an unconstitutional delegation of legislative authority, a criminal statute which purported to adopt future federal regulations defining controlled substances. The possession of such substances became criminal upon final publication of a federal regulation and the Washington State Board of Pharmacy's acquiescence in the regulation. We specifically noted in *Dougall* that we were not concerned with that Board's own rescheduling or designation of drugs pursuant to our APA. *Dougall*, at 121 n.1. Similarly, in *Powell,* we held only that the publication of regulations under the emergency procedures of the APA was an insufficient procedural safeguard to uphold a delegation of administrative authority because under those emergency procedures, rules may be adopted without compliance with the notice and public comment procedures generally required. *See* RCW 34.04.030.

The welfare fraud statute, by contrast, requires DSHS to follow the general provisions of the APA, including the ordinary notice and hearing requirements. *See* RCW 74.08-.090. This requirement, the provision for judicial review in RCW 74.08.080, and the guidelines provided by the Legislature in RCW 74.04.005 and .040 together are sufficient to meet the delegation standards set forth in *Polygon, Powell* and *Dougall.*

█ There is an additional reason appellants' argument on this issue must fail. They contend that the statute is invalid because an individual cannot determine the amount of any overpayment without referring to numerous DSHS regulations. Although this assertion may be true, it is irrelevant. In a prosecution for theft under RCW 9A.56 it is not necessary that the defendant either know the value of the property he has taken or intend to acquire a particular dollar amount of property. Neither factor is an element of theft even though "intent to deprive" is a necessary element. *State v. Delmarter,* 94 Wn.2d 634, 618 P.2d 99 (1980). Similarly, a welfare recipient does not need to know the amount of overpayment that his willfully false state-

ment will, in fact, cause. Appellants' argument is particularly unpersuasive when it is observed that the welfare fraud statute does not include the intent to deprive element present in RCW 9A.56 thefts. The State need only prove that the applicant made a willfully false statement or material omission which resulted in an overpayment. The State must prove the amount of overpayment in order to prove a particular degree of theft, *State v. Sass,* 94 Wn.2d 721, 620 P.2d 79 (1980), but the defendant's awareness of that amount is not in issue. In the present case each appellant stipulated that he or she willfully made false statements and as a consequence of those statements was paid more than he or she was "justly entitled."

## II

Appellants' second contention is that RCW 74.08.331 is unconstitutionally vague. They contend that the statute does not give citizens fair notice of conduct forbidden by a penal statute. *State v. Martinez,* 85 Wn.2d 671, 675, 538 P.2d 521 (1975). They further assert that the statutory language does not convey a sufficiently definite warning as to the proscribed conduct when measured by common understanding. *Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975).

▮▮ We have previously rejected a general contention that RCW 74.08.331 is unconstitutionally vague. *State v. Knowles,* 79 Wn.2d 835, 490 P.2d 113 (1971). We adhere to our holding:

Expressing the test for vagueness and uncertainty another way, would an applicant for or recipient of public assistance, upon a careful reading of RCW 74.08.331, understand what conduct is prohibited by it or what duty is enjoined upon him under criminal sanctions?

We think that the statute passes the test of reasonable certainty. An applicant for or recipient of public assistance, possessing ordinary understanding, should, we think, know that public assistance grants by their very nature depend on such things as *eligibility* (RCW 74.08-.025), *need* (RCW 74.04.005(16)), *resources* (RCW 74.04-.005(17)), and *income* (RCW 74.04.005(15)). A person of

ordinary understanding should have little difficulty in comprehending that, in applying for or in receiving public assistance, the statute obliges him to speak and report the truth in supplying material information about himself and his family concerning such things as assets, resources, income, family circumstances, health, age, educational skills, training, financial expectancies and contingencies—in short to give to the department a truthful report of all conditions and circumstances "affecting eligibility of need for assistance." RCW 74.08-.331.

*Knowles,* at 838–39.

Appellants specifically contend that the definition of "income" contained in former RCW 74.04.005(12) is unconstitutionally vague. That definition begins as follows:

"Income"—All appreciable gains in real or personal property (cash or kind) or other assets, which are received by or become available for use and enjoyment by an applicant or recipient after applying for or receiving public assistance: . . .

This court recently discussed this statute in *State v. Wallace,* 97 Wn.2d 846, 651 P.2d 201 (1982). *See also Toulou v. Department of Social & Health Servs.,* 27 Wn. App. 137, 616 P.2d 678 (1980).

■ The statute defining income may conceivably be unduly vague as applied in some hypothetical cases. Appellants, however, cannot legitimately complain of its application to themselves. Although a statute may be "'potentially vague as to some conduct, [it] may nevertheless be constitutionally applied to one whose act clearly falls within the statute's "hard core."'" *State v. Zuanich,* 92 Wn.2d 61, 63, 593 P.2d 1314 (1979), quoting *Bellevue v. Miller,* 85 Wn.2d 539, 541, 536 P.2d 603 (1975). *See also Broadrick v. Oklahoma,* 413 U.S. 601, 610, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973). In the present cases, appellants' stipulations placed them within the "hard core" of conduct clearly prohibited by the welfare fraud statute. One appellant, Barry, stipulated that she willfully failed to report that her working spouse was living in the household. She also willfully failed

to report his income.[5] The remaining appellants stipulated that they became employed while receiving AFDC benefits, and willfully failed to report their employment and income.[6] It is difficult to conceive of any conduct the statute is more clearly designed to prohibit.

Appellants further claim that other portions of the welfare fraud statute scheme are unconstitutionally vague. These contentions rest upon the fact that an individual is unable to determine the amount of overpayment a false statement may cause. Of course, employment and resulting income does not automatically disqualify a person from AFDC benefits and recipients' obtaining employment is encouraged. RCW 74.04.265. However, the inability of a

---

[5]Specifically, Barry's stipulation reads:

"3. That the defendant willfully failed to report and misrepresented, the presence of her husband in her home and the fact that he was working and earning income, to the Department of Social and Health Services . . . by committing the following acts: [listing questions asked on various assistance applications and the false answers given]

"5. That if the Court's ruling in denying defendant's motion to dismiss was correct then the rules and regulations contained in the Washington Administrative Code establish that the defendant received public assistance in an amount of $2,181.00 in excess of the amount to which she would have been entitled had she reported the presence of her husband in the household and the fact of his income . . ."

[6]A representative stipulation of the five other appellants is Holmes' stipulation which reads:

"3. That defendant became employed at the Bon Marche, 3rd and Pine, Seattle, on September 18, 1979 and continued working there through April 28, 1980 when she was terminated, and received and cashed paycheck every two weeks during this period, . . . and thereby received net earnings during that period in an amount over $3000.00, but not more than $3306.82.

"4. That the defendant willfully failed to report her employment and resulting income to the Department of Social and Health Services . . .

"5. That the defendant willfully misrepresented her employment and income status by committing the following acts: [listing questions asked on various assistance applications and the false answers given]
" . . .

"9. That defendant received public assistance in an amount greater than $250.00 more than that to which she would have been justly entitled to receive pursuant to the Washington Administrative Code as a consequence of not reporting her employment and income . . ."

recipient to determine the exact amount of his AFDC grant after receiving and willfully failing to report income does not make the statutes unduly vague. These contentions like those above fail under the stipulated facts. Also, as discussed in the preceding section a welfare recipient does not need to know the amount of overpayment. The State need only prove that the recipient made a willfully false statement or material omission which resulted in an overpayment. The amount of overpayment is determined by DSHS and only becomes relevant with regard to a particular degree of theft.

Accordingly, we affirm the six appellants' convictions.

WILLIAMS, C.J., STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.