[No. 24149-4-I.   Division One.   April 12, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. SHARON D. CAMPBELL, *Appellant*.

---

*Catherine L. Floit* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *H. Duane Evans, Deputy,* for respondent.

FORREST, J. — Sharon D. Campbell appeals the judgment and sentence finding her guilty of one count of grand larceny

(welfare fraud) claiming: (1) the information was insufficient because it failed to allege the dollar amount of the alleged fraud, (2) the portion of the judgment and sentence involving food stamps must be reversed because food stamps were not within the charging language, and (3) she is entitled to a new trial because the jury was not given an instruction pursuant to *State v. Petrich.*[1] We affirm.

By amended information filed June 11, 1979, Sharon Campbell and Lynae Brooks were charged with one count of grand larceny (welfare fraud). The information charged that between January 11, 1978, and March 1, 1979, Campbell and Brooks:

> by means of a willful false statement or representation or impersonation and a willful failure to reveal any material fact, as required by law, did feloniously obtain and attempt to obtain and aid and abet to obtain from the Department of Public Assistance, to-wit: warrants and lawful money of the United States to which either defendant was not entitled or which were a greater amount than either defendant was justly entitled to;
>     Contrary to RCW 74.08.331, and against the peace and dignity of the state of Washington.

After a 13-day trial, the jury found Campbell and Brooks guilty as charged on July 25, 1979. Both defendants absconded prior to sentencing. On February 10, 1989, Campbell was arrested in Texas pursuant to an outstanding bench warrant. Judgment and sentence were entered on May 24, 1989. Campbell was sentenced to a minimum of 4 years 2 months, an exceptional sentence imposed on the ground that the offense was a major economic offense, was sophisticated, and occurred over a lengthy period of time. Campbell timely filed a notice of appeal. The appeal has been considerably delayed due to a series of difficulties involving preparation of the verbatim report of proceedings.

## ISSUE 1

Was the information insufficient because it did not allege the dollar amount unlawfully obtained?

---

[1] 101 Wn.2d 566, 683 P.2d 173 (1984).

Campbell contends the information was constitutionally insufficient because it failed to allege the amount of public assistance allegedly unlawfully obtained, an essential element of the charged offense.[2] The welfare fraud statute, RCW 74.08.331, under which Campbell was charged and convicted does not specify any dollar amount of public assistance to constitute the crime. Indeed, an attempt is an alternative way to commit the crime, in which case proof of a dollar amount is elusive at best.[3] We note that this is a claim of purely formal error without any practical adverse impact on the defense.[4]

However, *State v. Bryce*,[5] held that RCW 9A.56.100,[6] taken in conjunction with the definitions of theft in RCW 9A.56-

---

[2] *State v. Simon*, 120 Wn.2d 196, 198, 840 P.2d 172 (1992); *State v. Hopper*, 118 Wn.2d 151, 155, 822 P.2d 775 (1992); *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991).

[3] RCW 74.08.331 provides in part:

"Any person who by means of a willfully false statement, or representation, or impersonation, or a willful failure to reveal any material fact, condition, or circumstance affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, . . . or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which the person is not entitled or greater public assistance than that to which he or she is justly entitled shall be guilty of grand larceny and upon conviction thereof shall be punished by imprisonment in a state correctional facility for not more than fifteen years."

[4] "In reviewing RAP 2.5 and [*State v.*] *Scott*, [110 Wn.2d 682, 757 P.2d 492 (1988)] we conclude that the proper approach in analyzing alleged constitutional error raised for the first time on appeal involves four steps. First, the reviewing court must make a cursory determination as to whether the alleged error in fact suggests a constitutional issue. Second, the court must determine whether the alleged error is manifest. Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case. Third, if the court finds the alleged error to be manifest, then the court must address the merits of the constitutional issue. Finally, if the court determines that an error of constitutional import was committed, then, and only then, the court undertakes a harmless error analysis." *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

[5] 41 Wn. App. 802, 707 P.2d 694 (1985).

[6] "All offenses defined as larcenies outside of this title shall be treated as thefts as provided in this title." RCW 9A.56.100.

.030, .040 and .050,[7] made the dollar amount an element of welfare fraud.

> Thus, the language of RCW 74.08.331 does not completely define all of the elements of the offense. It merely states one element — the methods in which this particular type of theft regarding public assistance entitlement can be committed. The second element of this theft crime is the amount of overpayment of public assistance. This element is essential. It identifies the offense and must be charged.
>
> Because the amount of overpayment of public assistance is an element of this theft crime, we agree with the trial court that since the information did not allege any amount unlawfully obtained, it stated only theft in the third degree, a gross misdemeanor[.]

(Citations omitted.) *State v. Bryce*, 41 Wn. App. 802, 806, 707 P.2d 694 (1985). The court based its conclusion in large part on its reading of the Supreme Court's opinion in *State v. Sass*.[8] We find the dissent in *Bryce* more persuasive and respectfully decline to follow the majority's holding.

■ As Judge Reed points out in his dissent in *Bryce*, the Supreme Court in *State v. Sass, supra,* stated: "[t]he sole question is what is the appropriate penalty" for violation of RCW 74.08.331. *State v. Sass*, 94 Wn.2d 721, 722, 620 P.2d 79 (1980). *Sass* did not hold that the dollar amount is an element of welfare fraud, but rather that "the criminal code had repealed 'by implication *the portion* of [RCW 74.08.331] establishing the welfare fraud *penalty* . . .' ". *Bryce*, 41 Wn. App. at 810 (Reed, A.C.J., dissenting) (quoting *Sass*, 94 Wn.2d at 726). The dissent also states:

---

[7]"(1) A person is guilty of theft in the first degree if he commits theft of:

"(a) Property or services which exceed(s) one thousand five hundred dollars in value[.]" RCW 9A.56.030.

"(1) A person is guilty of theft in the second degree if he commits theft of:

"(a) Property or services which exceed(s) two hundred and fifty dollars in value, but does not exceed one thousand five hundred dollars in value[.]" RCW 9A.56.040.

"(1) A person is guilty of theft in the third degree if he commits theft of property or services which does not exceed two hundred and fifty dollars in value." RCW 9A.56.050.

[8]94 Wn.2d 721, 620 P.2d 79 (1980).

[U]nlike theft in the first, second and third degrees, welfare fraud does not include a designated amount as an integral part of its definition of the crime. . . . Like the presumptive sentencing act, *Sass* simply states that a particular factor determines the punishment to be imposed. In neither case does it follow that such a factor becomes ipso facto an element of the underlying crime.

(Citation omitted.) *Bryce*, 41 Wn. App. at 810 (Reed, A.C.J., dissenting).

No Washington Supreme Court case has explicitly held that the amount of money involved in a charge of welfare fraud must be alleged as an element of the crime. Obviously, however, if our Supreme Court has indirectly adopted the *Bryce* holding, we would be bound thereby. We recognize that in *State v. Delcambre*,[9] the court cited *Bryce* without criticism.[10] But an analysis of the opinion leads us to the conclusion that the court was not adopting the *Bryce* holding, but, indeed, the opinion strongly suggests that *Bryce* was incorrect. Before turning to *Delcambre*, the Supreme Court's latest word on welfare fraud, we note *State v. Holmes*, 98 Wn.2d 590, 657 P.2d 770 (1983) also suggests that *Bryce* was wrongly decided.[11]

---

[9]116 Wn.2d 444, 451, 805 P.2d 233 (1991).

[10]"Accordingly, an information that charges welfare fraud in the language of the statute, plus the monetary amount involved to determine the penalty, apprises a defendant with reasonable certainty of the charge against him. *See State v. Bryce*, 41 Wn. App. 802, 806, 707 P.2d 694 (1985) (amount of overpayment of public assistance element of crime of welfare fraud); *State v. Brisebois*, 39 Wn. App. 156, 161, 692 P.2d 842 (1984) (total amount of overpayment element of crime of welfare fraud), *review denied*, 103 Wn.2d 1023 (1985)." *State v. Delcambre*, 116 Wn.2d 444, 451, 805 P.2d 233 (1991).

[11]"In a prosecution for theft under RCW 9A.56 it is not necessary that the defendant either know the value of the property he has taken or intend to acquire a particular dollar amount of property. Neither factor is an element of theft even though 'intent to deprive' is a necessary element. *State v. Delmarter*, 94 Wn.2d 634, 618 P.2d 99 (1980). . . . The State need only prove that the applicant made a willfully false statement or material omission which resulted in an overpayment. The State must prove the amount of overpayment in order to prove a particular degree of theft, *State v. Sass*, 94 Wn.2d 721, 620 P.2d 79 (1980), but the defendant's awareness of that amount is not in issue." *State v. Holmes*, 98 Wn.2d 590, 596-97, 657 P.2d 770 (1983).

In *Delcambre*, the defendants were convicted of welfare fraud and appealed claiming that the information was constitutionally defective because it failed to allege "intent to deprive" as an essential element of the crime, which was required because it is an explicit element of the crime of theft.[12] The claim is, of course, strikingly similar to that urged by Campbell; the only difference is that she relies on the absence of the dollar amount of the theft statute where Delcambre relied on the "intent to deprive" element of theft.[13] The Supreme Court rejected this claim and held that "intent to deprive" is not an element of the crime of welfare fraud. Consistency would require holding that the dollar amount of theft is likewise not an element of welfare fraud.

In the course of the opinion, the court noted that the Sentencing Reform Act of 1981 (SRA) made welfare fraud a seriousness level 2 offense along with first degree theft. The opinion acknowledged that this would appear to conflict with the *Sass* holding that the penalty for welfare fraud is determined by the amount of money involved. The Legislature, however, amended the SRA and deleted welfare fraud from the seriousness table.

> This suggests that the Legislature has now accepted the *Sass* interpretation of the penalties for welfare fraud.
> We interpret *Sass* to mean that only the penalties of theft now apply to welfare fraud. The issue in *Sass* was the appropriate remedy, not the substantive elements. *Sass* did not intend to incorporate the substantive elements of the theft crimes into the welfare fraud statute. The Court of Appeals in

[12]"Petitioners argue that language in *Sass* that the theft definitions and penalties in RCW Title 9A apply to welfare fraud makes the theft definitions of RCW 9A.56.020 essential elements of welfare fraud. RCW 9A.56.020 defines theft by taking, by deception, and by possession, all of which require 'intent to deprive' as the requisite state of mind for the commission of the crime. Thus, the petitioners conclude that 'intent to deprive' is an essential element of welfare fraud because it is an essential element of theft. *See State v. Komok*, 113 Wn.2d 810, 783 P.2d 1061 (1989) ('intent to deprive' essential element of theft)." *State v. Delcambre*, 116 Wn.2d at 446-47.

[13]Indeed, Delcambre's claim is more persuasive. Without an "intent to deprive" there is *no* theft; without a dollar amount even *Bryce* recognizes that a misdemeanor is charged. *Bryce*, 41 Wn. App. at 806.

[*State v.*] *Tyler* [47 Wn. App. 648, 736 P.2d 1090 (1987)] construed *Sass* far too broadly. If welfare fraud is considered to be simply another form of theft by deception, then there is no purpose to having a separate statute defining the crime of welfare fraud and the means of committing it.

. . . It is sufficient to charge the crime in the language of the statute if the statute defines the crime sufficiently to apprise an accused person with reasonable certainty of the nature of the accusation. *State v. Leach*, 113 Wn.2d 679, 686, 782 P.2d 552 (1989); *State v. Grant*, 89 Wn.2d 678, 686, 575 P.2d 210 (1978) (information must apprise defendants with reasonable certainty of the nature of the accusation against them so they may prepare an adequate defense).

*Delcambre*, 116 Wn.2d at 450-51.[14]

We find that the language "[w]e interpret *Sass* to mean that *only* the penalties of theft now apply to welfare fraud" substantially undermines the *Bryce* holding. (Italics ours.) *Delcambre*, 116 Wn.2d at 450.[15] Indeed, *Bryce* would clearly have been incorrect from the passage of the SRA in 1981 until its amendment in 1986. The court in *Delcambre* concluded its opinion with the following analysis of welfare fraud:

Welfare fraud is a substantive crime separate from the types of theft defined in RCW 9A.56.020. It contains its own scienter element and means of committing the offense. Only its penalty is determined by reference to the theft provisions. It is not subsumed totally under the crime of theft, otherwise RCW 74.08.331 has no purpose. The information charged the defendants in the language of the statute, which contains the scienter element of knowledge in the terms willful and willfully. *State v. Tyler*, 47 Wn. App. 648, 736 P.2d 1090 (1987), is overruled insofar as inconsistent with this opinion.

*Delcambre*, 116 Wn.2d at 451.

The two quoted discussions of the relationship between welfare fraud and theft, and consistency with the *Delcambre* holding, all support a rule that the amount of money is *not*

---

[14]If the amount was of importance to the defense, it could have been requested by a bill of particulars.

[15]The court's recognition in *Delcambre* that both actual and attempted welfare fraud were designated felonies, regardless of the amount involved, further undermines *Bryce*. *Delcambre*, 116 Wn.2d at 449.

an element of welfare fraud. We find these statements a more persuasive guide to the precedential authority of *Delcambre* than the one statement citing *Bryce*:

> *See State v. Bryce*, 41 Wn. App. 802, 806, 707 P.2d 694 (1985) (amount of overpayment of public assistance element of crime of welfare fraud) . . ..

*Delcambre*, 116 Wn.2d at 451. We conclude on the basis of *Delcambre* that the amount of money obtained is not an element of RCW 74.08.331 and need not be charged.[16] The amount, however, must be proved to establish the appropriate penalty. Although not constitutionally required, it would obviously be prudent to charge the amount as being in excess of one of the degrees of theft ($1,500 for first degree, $250 for second degree) so that the jury verdict would unequivocally establish the appropriate penalty level.

## ISSUE 2

Should any part of the conviction be reversed on the ground that the information did not mention food stamps?

Campbell contends that because the information alleged only that she unlawfully obtained warrants and currency, that part of the conviction representing the value of food stamps unlawfully obtained must be stricken.

Campbell was not charged with unlawfully obtaining food stamps. Furthermore, none of the court's instructions to the jury mentioned a conviction for unlawfully obtaining food stamps.[17] Therefore, even though evidence of food stamps was admitted (to which Campbell does not assign error), Campbell was not convicted of an offense involving food stamps. Because no part of the conviction involved food stamps, her argument is without merit.

---

[16] There is no claim that the information did not adequately inform Campbell of the crime, or that she suffered any practical prejudice.

[17] For example, the court's "to convict" instruction mentioned only obtaining or attempting to obtain "warrants or lawful money of the United States".

## Issue 3

Is Campbell entitled to a new trial on the ground that the jury was not given an instruction pursuant to *State v. Petrich*?[18]

Campbell contends the evidence showed 21 separate instances of conduct which could have formed the basis for separate counts. Therefore, Campbell contends that because the State did not elect the act upon which it would rely and because the court failed to instruct the jury that each member must agree that the same underlying criminal act has been proved beyond a reasonable doubt, Campbell is entitled to a new trial.

The State contends the acts for which Campbell was charged constituted a continuing offense for which a *Petrich* instruction need not be given. We agree.

When the evidence indicates that several distinct criminal acts may be committed but the defendant is charged with only one count,

> [t]he State may, in its discretion, elect the act upon which it will rely for conviction. Alternatively, if the jury is instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, a unanimous verdict on one criminal act will be assured. When the State chooses not to elect, this jury instruction must be given to ensure the jury's understanding of the unanimity requirement.

*State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984).[19]

█ However, "a continuing course of conduct may form the basis for one charge in an information. . . . To determine whether one continuing offense may be charged, the facts must be evaluated in a commonsense manner." (Citations omitted.) *Petrich*, 101 Wn.2d at 571. For example, in *United*

---

[18]101 Wn.2d 566, 683 P.2d 173 (1984).

[19]The State acknowledges that although *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984) was decided after Campbell was convicted, *Petrich* was a clarification of the rule announced in *State v. Workman*, 66 Wash. 292, 119 P. 751 (1911), and that the *Petrich* rule was applicable at the time of Campbell's trial.

*States v. Berardi,*[20] the court held that three separate instances of influencing or impeding the same witness constituted the same course of conduct, even though the State could have charged each in a separate count for violation of the obstruction of justice statute. The court noted that the statute made it unlawful for a person to "endeavor" to influence, intimidate, or impede any witness. From this, the court concluded that, even though each discrete act of obstruction was chargeable under the statute, the statute also contemplated "a continuing course of conduct, during the pendency of a judicial proceeding, designed to further the single object of influencing, intimidating or impeding a witness." (Footnote omitted.) *Berardi,* 675 F.2d at 898.[21]

Likewise, in *State v. Gooden,*[22] the court held that the offense of promoting prostitution both permits conviction for each distinct act, and also contemplates a continuing course of conduct consisting of instituting, aiding, or facilitating a prostitution enterprise.

■ Similarly, the welfare fraud statute makes it unlawful for a person to attempt to obtain public assistance to which that person is not lawfully entitled. Under the reasoning of *Berardi* and *Gooden,* it can be said that the welfare fraud statute contemplates a continuing course of conduct in furtherance of the single goal of obtaining public assistance to which one is not entitled. The evidence showed that Campbell and Brooks engaged in a sophisticated and broad scheme involving numerous acts but in furtherance of a single goal. It was therefore not error for the trial court to treat the acts involved as constituting one continuous offense. The State was not required to elect the act upon which to base its case

---

[20] 675 F.2d 894 (7th Cir. 1982).

[21] The court noted that "endeavor" means "to strive to attain some object." This, the court felt, supported its conclusion that the commission of several acts in furtherance of the single object of influencing a particular witness was within the scope of the offense of endeavoring to influence a witness. *Berardi,* 675 F.2d at 898 n.7.

[22] 51 Wn. App. 615, 754 P.2d 1000, *review denied,* 111 Wn.2d 1012 (1988).

and the court was not required to instruct the jury according to *Petrich.*

ISSUE 4

Was the exceptional sentence of 4 years 2 months proper? ■ Campbell was properly convicted of welfare fraud. Since no specific dollar amount was charged, the jury verdict by itself does not determine the appropriate penalty level. In some cases this might present a problem. That is not the case here. The evidence is overwhelming that the amounts unlawfully obtained were far in excess of the $1,500 necessary to make the first degree theft penalty applicable. Furthermore, we have a judicial determination by the sentencing judge that restitution was payable in the sum of $25,000 which is unchallenged on appeal and is in excess of 10 times the amount necessary for theft in the first degree. Accordingly, the standard range would be calculated on the basis of the penalty for theft in the first degree. The exceptional sentence imposed is not challenged.

Affirmed.

COLEMAN and KENNEDY, JJ., concur.

Review granted at 122 Wn.2d 1015 (1993).