[No. 60609-9.   En Banc.   February 9, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. SHARON D. CAMPBELL, *Petitioner*.

*Catherine L. Floit* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *H. Duane Evans, Senior Prosecuting Attorney,* for respondent.

DURHAM, C.J. — This appeal is from a Court of Appeals decision affirming the Defendant's conviction and sentence for welfare fraud. Defendant Sharon Campbell contends that the information charging her was constitutionally insufficient. The sole question before us is whether the dollar amount is an essential element of the crime of unlawfully obtained public assistance (welfare fraud) under RCW 74.08.331. The Court of Appeals is divided on the issue. *State v. Bryce,* 41 Wn. App. 802, 707 P.2d 694 (1985) (holding that dollar amount is an essential element of welfare fraud); *State v. Campbell,* 69 Wn. App. 302, 848 P.2d 1292 (1993) (holding dollar amount is not an essential element). We granted review to resolve the conflict. We reverse, and hold that the amount of overpayment of public assistance is an essential element of welfare fraud.

## FACTS

In 1979, Campbell was charged with one omnibus count of grand larceny by welfare fraud under RCW 74.08.331. The second amended information accused Campbell and a codefendant of the crime of grand larceny (welfare fraud), and alleged that they,

> during a time intervening between January 11, 1978, through March 1, 1979, by means of a willful false statement or representation or impersonation did feloniously obtain and attempt to obtain and aid and abet to obtain from the Department of Public Assistance (Department of Social and Health Services for the State of Washington) to-wit: warrants and lawful money of the United States to which either defendant was not entitled or which were greater than either defendant was justly entitled to;
>
> Contrary to RCW 74.08.331, and against the peace and dignity of the state of Washington.

Clerk's Papers, at 56-57. The information lacked mention of the dollar amount of public assistance alleged to have been fraudulently obtained. Unlike the general theft statute, the welfare fraud statute does not of itself create different degrees of the crime. It provides only that:

Any person who by means of a willfully false statement, or representation, or impersonation, or a willful failure to reveal any material fact, condition or circumstance affecting eligibility of [*sic*] need for assistance, including medical care, surplus commodities and food stamps, as required by law, . . . or any other change in circumstances affecting the person's eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which the person is not entitled or greater public assistance than that to which he or she is justly entitled shall be guilty of grand larceny and upon conviction thereof shall be punished by imprisonment in a state correctional facility for not more than fifteen years.

RCW 74.08.331. At trial, the State presented evidence that Campbell and her codefendant engaged in a sophisticated pattern of welfare fraud involving 22 different aliases and seven different welfare offices. The scam netted nearly $73,000. Campbell was found guilty in July 1979. Campbell absconded before sentencing and a bench warrant was issued.[1] She was subsequently arrested in Texas in 1989 and eventually sentenced to a minimum term of 4 years 2 months. She then filed a timely appeal. Her appeal was continued for 3 years while an effort was made to obtain a verbatim report of proceedings. The Court of Appeals affirmed the judgment and sentence finding her guilty of one count of grand larceny (welfare fraud). *State v. Campbell*, 69 Wn. App. 302, 848 P.2d 1292 (1993).

### STANDARD OF REVIEW

An appellate court reviews issues of law de novo. *State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991), *cert. denied*, 117 L. Ed. 2d 453 (1992). Although the information charging Campbell was filed in 1979, subsequent case law interpreting the sufficiency of an information is applicable, since constitutional rulings in criminal cases apply retroactively to all cases not yet finally decided on direct review.

---

[1]The State submitted a statement of additional authorities referring to cases construing the "fugitive from justice" doctrine. That doctrine allows appellate courts under certain circumstances to refuse to hear an appeal on the grounds that a fugitive (or sometimes a former fugitive recaptured before appeal) has disentitled himself from the right of appeal. *See generally Ortega-Rodriguez v. United States*, 507 U.S. 234, 122 L. Ed. 2d 581, 113 S. Ct. 1199 (1993). The issue has not been briefed and we therefore decline to reach it.

*McCormack*, at 145; *see also Griffith v. Kentucky*, 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987). A challenge to the sufficiency of a charging document is of constitutional magnitude and may be raised for the first time on appeal. *State v. Leach*, 113 Wn.2d 679, 691, 782 P.2d 552 (1989).

### NATURE OF CHARGING INSTRUMENT

■ A charging document must be written in a manner that enables persons of common understanding to know what is intended. RCW 10.37.050(6). It is constitutionally adequate only if all essential elements of a crime are included in the document. *State v. Hopper*, 118 Wn.2d 151, 156, 822 P.2d 775 (1992). The purpose of this "essential elements" rule is to give notice of the nature and cause of an accusation against the accused so that a defense can be prepared. *Auburn v. Brooke*, 119 Wn.2d 623, 627-29, 836 P.2d 212 (1992). The rule ensures that the accused is apprised "with reasonable certainty of the nature of the accusation". *Leach*, at 688. The rule is grounded in almost identical language in the state and federal constitutions. Const. art. 1, § 22 (amend. 10); U.S. Const. amend. 6 ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation"). It is also rooted in due process doctrines concerning notice. U.S. Const. amends. 5, 14. *See Leach*, at 694-95.

■ When a defendant first claims on appeal that the charging document lacks an essential element of the crime charged, a stricter standard of review is applied. *Hopper*, at 155. The charging document is to be examined to determine whether there exists a fair construction by which the elements are all contained in the document. *Hopper*, at 156-57. This stricter standard:

> permits a court to construe a charging document quite liberally. If the information contains allegations that express the crime which was meant to be charged, it is sufficient even though it does not contain the statutory language. A court should be guided by common sense and practicality in construing the language. Even missing elements may be implied if the language supports such a result.

(Citations omitted.) *Hopper*, at 156.

However, this stricter standard is a rule of construction only. *Hopper*, at 157. If the document cannot be construed to give notice of or to contain in some manner the essential elements of a crime, the most liberal reading cannot cure it. *Hopper*, at 157. Moreover, even if a court can discern the presence of the essential elements by such liberal canons of construction, if the accused can nevertheless show "that he or she actually lacked the requisite notice to prepare an adequate defense, the conviction should be dismissed". *Hopper*, at 156.

## ESSENTIAL ELEMENTS OF WELFARE FRAUD

The precise question presented by this case is whether the crime of welfare fraud includes as an essential element the dollar amount of unlawfully obtained public assistance. Division Two of the Court of Appeals, construing this court's cases prior to 1985, concluded that it does. *State v. Bryce*, 41 Wn. App. 802, 707 P.2d 694 (1985). Division One, construing a more recent case from this court, concluded that it does not. *State v. Campbell*, 69 Wn. App. 302, 307, 848 P.2d 1292 (1993) (citing *State v. Delcambre*, 116 Wn.2d 444, 805 P.2d 233 (1991)).

The ambiguity stems from the history of RCW 74.08.331. That statute defines welfare fraud as grand larceny punishable by up to 15 years of imprisonment, regardless of the amount of welfare wrongly obtained. When the Legislature revised the criminal statutes in 1975, it failed to repeal or modify numerous larcenies that were defined in areas of the RCW outside of Title 9A. Instead, the Legislature provided that "[a]ll offenses defined as larcenies outside of this title shall be treated as thefts as provided in this title." RCW 9A.56.100. As the history of judicial interpretation of this sentence shows, the precise legislative intent behind the phrase "shall be treated as thefts" is not easily discerned. *See State v. Sass*, 94 Wn.2d 721, 620 P.2d 79 (1980); *State v. Holmes*, 98 Wn.2d 590, 657 P.2d 770 (1983); *State v. Delcambre*, 116 Wn.2d 444, 805 P.2d 233 (1991); *State v. Bryce*, 41 Wn. App. 802, 707 P.2d 694 (1985); *State v. Brisebois*, 39 Wn. App. 156, 692 P.2d 842 (1984), *review denied*, 103

Wn.2d 1023 (1985); *State v. Tyler*, 47 Wn. App. 648, 736 P.2d 1090 (1987).

Thefts are classified as first, second, and third degree, depending on the value of the property involved. *See* RCW 9A.56.030 (property in excess of $1,500 is first degree); RCW 9A.56.040 (property in excess of $250 but less than $1,500 is second degree); RCW 9A.56.050 (property less than $250 is third degree). First degree theft is a class B felony; second degree theft is a class C felony; third degree theft is a gross misdemeanor. RCW 9A.56.030-.050.

Campbell argues that the language of RCW 9A.56.100 ("shall be treated as thefts") means that welfare fraud, defined as a type of larceny, has been repealed and now is a species of theft. Under the theft statutes, she argues, the dollar amount unlawfully obtained determines the degree of theft and is an element of the crime which must be charged and proved.

This court has interpreted the relation between RCW 74.08.331 and RCW 9A.56.100 in a sequence of three cases: *State v. Sass, supra; State v. Holmes, supra*; and *State v. Delcambre, supra*. Division Two, deciding *Bryce* in 1985, relied heavily on *Sass*. Division One's decision in the present case relies on ambiguous phrasing in this court's more recent decision in *Delcambre*.

■ Our cases have gradually established the principle that, while the crime of welfare fraud does not incorporate the scienter elements of theft, it does incorporate the degrees of theft.

> RCW 9A.56.100 provides that all offenses defined as larcenies elsewhere will be treated as thefts under RCW Title 9A. This provision impliedly repealed the portion of RCW 74.08.331 making welfare fraud grand larceny and providing for a specific punishment. *State v. Sass*, 94 Wn.2d 721, 726, 620 P.2d 79 (1980). The crime of welfare fraud is now a theft, the degree of which depends upon the monetary amount involved. *Sass*, 94 Wn.2d at 725.

*Delcambre*, 116 Wn.2d at 446. Thus, though welfare fraud now borrows the degrees of theft, it does not incorporate any other elements from the theft statute, such as intent to deprive.

> Welfare fraud is a substantive crime separate from the types of theft defined in RCW 9A.56.020. It contains its own scienter element and means of committing the offense. Only its penalty is determined by reference to the theft provisions.

*Delcambre*, at 451 (overruling *State v. Tyler*, 47 Wn. App. 648, 736 P.2d 1090 (1987)).

██ The Court of Appeals and the State both note that *Delcambre* did not specifically hold that the amount of overpayment is now an essential element of the crime of welfare fraud. However, the information at issue in *Delcambre* alleged the crime in the language of both the welfare fraud statute and the first degree theft statute. *Delcambre*, 116 Wn.2d at 445. It was within that context that we stated,

> an information that charges welfare fraud in the language of the statute, plus the monetary amount involved to determine the penalty, apprises a defendant with reasonable certainty of the charge against him. *See State v. Bryce*, 41 Wn. App. 802, 806, 707 P.2d 694 (1985) (amount of overpayment of public assistance element of crime of welfare fraud); *State v. Brisebois*, 39 Wn. App. 156, 161, 692 P.2d 842 (1984) (total amount of overpayment element of crime of welfare fraud), *review denied*, 103 Wn.2d 1023 (1985).

*Delcambre*, 116 Wn.2d at 451. As our references make clear, we intended in *Delcambre* to overrule only *Tyler*, not *Bryce* and *Brisebois*.

This result follows also from the general purpose behind the essential elements rule. "It is sufficient to charge the crime in the language of the statute if the statute defines the crime sufficiently to apprise an accused person with reasonable certainty of the nature of the accusation." *Delcambre*, 116 Wn.2d at 450-51. Since RCW 9A.56.100 grafted the degrees of theft onto the elements stated in the language of the welfare fraud statute, an accused person is sufficiently apprised of the nature of the accusation only if an amount of overpayment and corresponding degree is alleged.

██ Campbell raised this challenge to the sufficiency of the information for the first time on appeal. We therefore construe the charging document liberally for indications of the essential elements of the charged offense, guided by common sense and practicality. *State v. Hopper*, 118 Wn.2d 151, 156,

822 P.2d 775 (1992). Unlike the information in *Delcambre*, the information at issue here did not allege the crime in the language of both the welfare fraud statute and a degree of the theft statute. *See* 116 Wn.2d at 445. Nor did it allege an amount of overpayment. Since the essential elements of the charged offense are not stated in the information and cannot be discerned using the standard of construction for challenges first raised on appeal, we reverse and dismiss without prejudice to the State's ability to refile charges. *State v. Vangerpen*, 125 Wn.2d 782, 888 P.2d 1177 (1995); *State v. Simon*, 120 Wn.2d 196, 199, 840 P.2d 172 (1992).

UTTER, DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., and ANDERSEN and BRACHTENBACH, JJ. Pro Tem., concur.