# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 73902-6-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAMEEL L. PADILLA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 24, 2017 |

SPEARMAN, J. — Jameel Padilla was convicted of communication with a minor for immoral purposes (CMIP). On appeal, he argues that the State's charging document was constitutionally deficient because it lacked an essential element. Additionally, Padilla asserts that the trial court abused its discretion by not taking action when defense counsel alleged that a juror was sleeping during trial. He also challenges two of the community custody conditions imposed by the trial court as void for vagueness and thus unconstitutional. We accept the State's concession that the condition prohibiting Padilla from frequenting places where minors congregate is unconstitutionally vague, but Padilla's remaining arguments are without merit. We remand to strike the unlawful condition, but otherwise affirm the judgment and sentence.

FACTS

In March and April 2012, K.M., a nine-year-old girl, received sexually explicit messages on Facebook from an individual using the profile name "Jim Wilcox." K.M. did not understand what some of the messages meant, so she told her father about the conversation. A relevant portion of the message K.M. received was as follows:

> Wilcox: are you alone?
> K.M.: ya.y?
> Wilcox: cause I'm jerking off to you. what are you wearing?
> Wilcox: you are so pretty, my cock is still hard for you.
> K.M.: shut up I am 9!!!!!!!!!!!
> Wilcox: suck it
> K.M.: no u r gross I am 9 so back off

Exhibit 11.

K.M.'s father reported the messages to the police. While the detectives were investigating the complaint, they discovered that the Internet Protocol Address for the computer used to access the Facebook account was associated with Jameel Padilla of Everett, Washington.

In September 2012, Everett Police executed a search warrant at Padilla's home. A search of Padilla's computer revealed that Padilla had used various aliases including that of "Jim Wilcox" on Facebook.

Padilla was charged with CMIP and the case proceeded to a jury trial. After the conclusion of the evidence, but before instructing the jury, defense counsel moved the court to designate juror 8 as the alternate juror. Defense counsel stated as his reason that "[p]eople who have been watching with me

2

during the trial have noticed that juror 8 spends a lot of time appearing to be sleeping. Nodding off. We saw a lot of inattention there." Id.

The trial court asked the prosecutor about his observations of the juror. The prosecutor responded that neither he nor the detective who sat at counsel table during the trial saw juror 8 sleeping and that he objected to the motion. The court asked defense counsel if he had "anything further[.]" Id. at 12. He indicated that he did not. The court stated that it also had not seen any jurors sleeping. It denied the motion and juror 8 deliberated on the verdict. The jury returned a verdict of guilty as charged. At sentencing, the court imposed several conditions of community custody. Padilla appeals.

## DISCUSSION

Padilla contends that the State's charging document was constitutionally deficient. He correctly points out that under State v. Hosier, 157 Wn.2d 1, 15, 133 P.3d 936 (2006), an essential implied element of the crime of CMIP is that he intended for the communication to reach a minor. Padilla argues that the charging document did not specifically allege this element, and thus, it failed to provide him with proper notice of the charges brought against him.

Challenges to the sufficiency of a charging document are reviewed de novo. State v. Williams, 162 Wn.2d 177, 182, 170 P.3d 30 (2007) (citing State v. Campbell, 125 Wn.2d 797, 801, 888 P.2d 1185 (1995)). A challenge to a charging document's constitutional sufficiency can be raised for the first time on direct appeal. State v. Kjorsvik, 117 Wn.2d 93, 102, 812 P.2d 86 (1991). If a

3

charging document is challenged after a verdict has been returned, the document will be more liberally construed in favor of validity. Id. at 106

The standard for reviewing the sufficiency of a charging document is two pronged: (1) whether the charging document has the necessary facts, or those facts can be found by fair construction; and if so, (2) whether the defendant can show that he was actually prejudiced by any vague language. Id. Under the first prong, if the necessary facts cannot be found in the charging document, prejudice is presumed and the conviction will be reversed. State v. Zillyette, 178 Wn.2d 153, 162, 307 P.3d 712 (2013) (citing State v. McCarty, 140 Wn.2d 420, 425, 998 P.2d 296 (2000)). Under the second prong, the defendant must establish actual prejudice.[1] Kjorsvik, 117 Wn.2d at 111.

The CMIP statute prohibits "communicat[ion] with a minor or with someone the person believes to be a minor for immoral purposes . . . through the sending of an electronic communication." RCW 9.68A.090(2). The statute does not explicitly state a requirement that the person must intend for the communication to reach a minor, but our supreme court has held that such a requirement is implied and must be proved in order for the State to obtain a conviction for CMIP. State v. Hosier, 157 Wn.2d at 15. Padilla argues that the charging document in this case was deficient because it was missing this implied element.

---

[1] Padilla argues only under the first prong of this standard and does not contend that he suffered actual prejudice. Accordingly, we do not reach the issue under the second prong of whether Padilla was prejudiced by any vague language in the charging document.

When deciding whether a charging document has the necessary facts, we look at the document as a whole with a common sense approach. Kjorsvik, 117 Wn.2d at 109. A charging document is constitutionally sufficient when, read as a whole and in a common sense manner, an implied essential element can be inferred through a liberal construction in favor of its validity. Id. at 110-11. Our first inquiry is whether the nonstatutory element of "intent to reach a minor" can be fairly implied from the language in the charging document. Id. at 108.

In the present case, the charging document tracked the language of the CMIP statute. It read:

> COUNT I: COMMUNICATION WITH A MINOR FOR IMMORAL PURPOSES VIA ELECTRONIC COMMUNICATION, committed as follows: That the defendant, on or about the 5th day of March 2012, through the 14th day of April 2012, did communicate with a person under the age of 18 years for immoral purposes through the sending of an electronic communication . . . .

Clerk's Papers (CP) at 63-64. This language apprised Padilla that he was accused of committing the crime of CMIP and of the following factual allegations: (1) that he communicated by means of an electronic communication; (2) that the communication was for an immoral purpose; and (3) that the communication was with a person under 18 years of age. We fail to see, nor does Padilla explain, how he could have sent an electronic communication to a child and yet not have intended for the communication to reach the child. Liberally construed, the language in the charging document fairly implies the allegation that Padilla intended that the communication reach a minor.

5

Kjorsvik, 117 Wn.2d 93 is instructive. In that case, a defendant challenged his robbery conviction because the State's charging document was missing the implied essential element of "intent to steal." Id. at 95-96. The court upheld the defendant's conviction and reasoned that it would be "hard to perceive how the defendant" could have forcefully taken money from the shopkeeper while brandishing a weapon but did not intend to steal the money. Id. at 110. Similarly here, because the charging document describes Padilla sending electronic communication to a minor, a fair reading is that through this volitional act, he intended to reach a minor. We conclude that the language of the charging document is sufficient because it contains all the necessary facts to reasonably inform Padilla of the elements of the crime charged.

Next, Padilla argues the trial court abused its discretion when it refused to investigate whether juror 8 was sleeping during trial and denied his motion to have juror 8 named as the alternate juror. We disagree on both counts.

A trial court's determination of whether a juror was inattentive during trial is reviewed for abuse of discretion. State v. Hughes, 106 Wn.2d 176, 204, 721 P.2d 902 (1986). A trial court's decision will only be disturbed if it was manifestly unreasonable or based on untenable grounds. State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004) (citing State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Relying on United States v. Barrett, 703 F.2d 1076 (9th Cir. 1983), Padilla argues that the trial court failed to investigate whether juror 8 had been sleeping. But the case is distinguishable. In Barrett, a juror asked to be excused because

6

he was sleeping during the trial. Id. at 1082. The trial court declined to remove him. Id. After a guilty verdict, the defendant sought permission from the court to interview the juror. Id. The court denied the request because "there was no juror asleep during the trial." Id. at 1082-83. On appeal, the court held that the judge abused his discretion. Id. at 1083.

The Barrett court recognized that it is not always necessary for a judge to make further inquiry in response to a defendant's allegation that a juror had been sleeping, because a judge may properly take judicial notice of the fact that the juror had not been sleeping. Id. But in that case, in light of the juror's admission that he had been sleeping during the trial, there was no basis for the trial court's "bare assertion" that he was not. Id. Thus, the trial judge's decision to take judicial notice was an abuse of discretion because it was based on untenable grounds. The case was remanded for a hearing on whether the juror was sleeping, and if so, whether that fact prejudiced the defendant's right to a fair trial. Id.

This case is unlike Barrett. Here, after defense counsel alleged that Juror 8 appeared to be sleeping during the trial, the trial court investigated the matter by questioning the prosecutor and allowing defense counsel the opportunity to provide "anything further." Verbatim Report of Proceedings (VRP) (06/25/15) at 12.The trial court then took judicial notice that it had not seen any jurors sleeping during the trial. On these facts, the trial court properly investigated the allegation and did not err when it took judicial notice of its own observations. The trial court

7

did not abuse its discretion when it refused to designate juror 8 as the alternate. There was no error.

Next, Padilla challenges two community custody conditions that were imposed during sentencing. Padilla challenges the prohibition from frequenting areas where minor children are known to congregate because it is unconstitutionally vague. He also contends that the community custody condition restricting him from possessing or accessing pornographic material is unconstitutionally vague.

A community custody condition is unconstitutionally vague if it (1) does not provide people with fair warning of prohibited conduct and (2) does not have standards to avoid arbitrary enforcement. State v. Irwin, 191 Wn. App. 644, 652-53, 364 P.3d 830 (2015).

The State concedes, and we agree, that the community custody condition prohibiting Padilla from frequenting areas where minor children are known to congregate is void for vagueness and should be stricken. In Irwin, we found that an identical prohibition was an unconstitutionally vague community custody condition. Irwin, 191 Wn. App. at 652-53. We therefore remand to the sentencing court with instructions to strike the vague condition.

However, the condition prohibiting Padilla from possessing or accessing pornographic materials clearly defines what is restricted. State v. Bahl, 164 Wn.2d 739, 758, 193 P.3d 678 (2008). In Bahl, the sentencing court imposed a community custody condition prohibiting "'Bahl from possessing or accessing pornographic materials, as directed by the supervising Community Corrections

8

Officer.'" Id. at 754. The court held that the condition was void for vagueness because the word "pornographic" was not clearly defined. Id. at 757-58. Additionally, because Bahl's community corrections officer could direct what was within the condition, the condition could be arbitrarily enforced. Id. at 758. Here, unlike in Bahl, pornographic materials is clearly defined as "images of sexual intercourse, simulated or real, masturbation, or the display of intimate body parts." CP at 37. The condition does have standards to avoid being arbitrarily enforced because the restricted material is clearly defined. We reject Padilla's argument.

Padilla asks that no costs be awarded on appeal. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2. However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Here, Padilla was found indigent by the trial court. If the State has evidence indicating that Padilla's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

Statement of Additional Grounds

Padilla makes two arguments in a statement of additional grounds. In his first additional ground for review, Padilla argues that the trial court erred in allowing Facebook records to be presented during trial when the officer presenting the records did not know what the technical data on the records

9

meant. He contends that a Facebook employee was required to present the records. He is incorrect.

Under RCW 10.96.030(2) business records may be admissible without testimony from the custodian of the records if the records are accompanied by an affidavit that meets certain requirements. In this case, there was a pretrial hearing regarding the admissibility of Facebook records without the necessity of calling the custodian as a witness. The trial court ruled that the Facebook records were admissible because they were accompanied by the affidavit required by the statute. Padilla cites to nothing in the record to dispute this finding.

In his second additional ground for review, Padilla argues that the trial court erred in not penalizing Detective Defolo for perjury when he misquoted Padilla. On direct examination, Defolo testified about "parents" being angry about Padilla's communications. On cross, defense counsel impeached Defolo with his report in which he apparently wrote that "people" not "parents" were angry. VRP (06/23/15) at 174-75. Because Padilla sought no further relief from the trial court, the claim is waived. RAP 2.5(a).

Remanded to strike the unlawful condition but otherwise affirmed.

_____Spearman, J._____

WE CONCUR:

_____Trickey, ACJ_____          _____Mann, J._____

10