# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79034-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| BOUNPHET MANIVANH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 3, 2020 |
| | ) | |

MANN, A.C.J. — Bounphet Manivanh appeals his conviction for driving under the influence (DUI), contending that the trial court abused its discretion when it allowed the State to amend the information midtrial, changing the charge from a violation of RCW 46.61.502(1)(c) (driving while affected by alcohol), to a violation of RCW 46.61.502(1)(a) (having a blood alcohol content (BAC) above 0.08 within two hours of driving). We affirm Manivanh's conviction but remand to the trial court to exercise its discretion under RCW 46.61.5054(1)(b) to suspend the $250 toxicology lab fee in all or part based on Manivanh's financial situation.

I.

On September 10, 2017, at 1 a.m., Renton Police Officer Michael Thompson stopped Manivanh for a broken headlight. Manivanh and his wife were driving home

from their niece's birthday party. When Thompson asked Manivanh for his license and registration, he noticed that Manivanh's eyes were bloodshot, watery, and droopy. Thompson asked Manivanh if he had been drinking and Manivanh remained silent. Manivanh handed his wallet to his wife and she retrieved Manivanh's license.

Thompson called for backup, suspecting that Manivanh was impaired. Officer Jeanne Christiansen arrived and assumed control of the investigation. Upon approaching Manivanh's vehicle, Christiansen smelled alcohol and the intensity of the smell increased when Manivanh spoke. Manivanh admitted drinking two beers at his niece's birthday party. Christiansen asked if Manivanh would perform a field sobriety test. Manivanh refused to answer the question. Christiansen placed Manivanh under arrest.

Manivanh did not exit the vehicle and Christiansen escorted him out by opening the car door and grabbing his hands. When Christiansen read Manivanh the Miranda warnings, Manivanh claimed he needed an interpreter. When Christiansen asked Manivanh what language he spoke, he said he did not know.

Christiansen transported Manivanh to the police station for a breath test, but Manivanh refused and stated he needed a Khmu interpreter. Christiansen obtained a search warrant for a blood draw. Christiansen transported Manivanh to the hospital and the blood sample was taken at 3:37 a.m. The Washington State Patrol Crime Laboratory determined that Manivanh had a BAC of 0.18.

At the time of the incident, Manivanh was required to have an ignition interlock installed on his vehicle and his license was suspended. The State charged Manivanh with one count felony driving under the influence, one count of violating an ignition

interlock requirement, and one count of first degree driving with a suspended license. At the beginning of trial, the State amended the information and reduced the license charge from first to third degree. The State alleged in its original information and first amended information that Manivanh "drove a vehicle within this state while under the combined influence of or affected by intoxicating liquor and any drug and while under the influence of or affected by intoxicating liquor or any drug; having at least three prior offenses within ten years of the arrest." The language was based on RCW 46.61.502(1)(c), commonly known as the "affected by" prong of DUI.

The defense moved pretrial for an order in limine requiring the State to disclose potential expert witnesses. The State responded that none of its witnesses were providing expert testimony, rather they would be "testifying to things they've observed and things they have personal knowledge of."

Manivanh was tried by jury beginning August 22, 2018. The prosecutor's opening statement emphasized that "Manivanh's blood alcohol content at the end of the night was 0.18, which is over twice the legal limit." Defense counsel's opening statement acknowledged that Manivanh's BAC was 0.18, but asked the jury to think about "what is the evidence of intoxication in this case." The defense explained that the jury would hear officer testimony about Manivanh's bloodshot and watery eyes, the odor of alcohol, and an admission to consuming two beers, but that the jury would not hear that he had "trouble standing up, trouble walking, trouble driving, trouble talking, the kind of things that indicate a person's actually intoxicated." The defense explained that Manivanh did not cooperate because there was a language barrier. Further, during closing argument, the defense criticized a video that the State introduced from inside

the police car, arguing that the video contradicted the officers' testimonies that Manivanh slurred his words because Manivanh spoke clearly while being transported to the police station.

Justin Knoy, the state toxicologist who tested Manivanh's blood testified about the testing procedures. Officer Thompson then testified about the stop and his observations. Kelly Harris, a records custodian for the Department of Licensing, testified and introduced records showing Manivanh's license was suspended and that he was required to have an ignition interlock device. Officer Christian, the arresting officer and officer that obtained the warrant for Manivanh's blood draw, testified that the results of the test were a BAC of 0.18.

After Knoy and Thompson testified, the State moved to amend the information to allege that Manivanh's BAC exceeded the legal limit. The State also requested leave to recall Knoy to testify about the burn-off rate of alcohol in humans because the State needed the testimony to prove that Manivanh's BAC exceeded 0.08, within two hours of driving. The defense opposed the amendment, contending that it prejudiced Manivanh because the defense conceded BAC during opening, with the understanding that the State was only proceeding under the "affected by" alternative. Further, the defense opposed recalling Knoy to testify to the burn-off rate in humans because it was expert testimony and the State failed to disclose during motions in limine that Knoy would be offering expert testimony.

The trial court granted the State's request to amend the information. The defense moved to dismiss under CrR 8.3(b) for government mismanagement or, in the alternative, to prevent Knoy from testifying further because any expert testimony

-4-

violated the motions in limine. In clarifying its ruling, the court asked the State to explain its offer of proof. The State responded that it expected Knoy to testify that, after two and a half hours, a "person would be in the elimination phase, because alcohol peaks in its absorption after 1 1/2 hours." The State indicated it would not use any hypothetical situations to analogize to Manivanh's BAC when eliciting testimony. The court concluded that as long as the State did not elicit testimony from Knoy connecting Knoy's knowledge about the burn-off rate to Manivanh's BAC and consumption timeframe, then the testimony would not violate the motions in limine.[1] The court denied Manivanh's motion to dismiss.

The second amended information alleged that Manivanh

drove a vehicle within this state and while driving had an amount of alcohol in his/her body sufficient to cause a measurement of his/her blood to register 0.08 percent or more by weight of alcohol within two hours after driving, as shown by analysis of the person's blood and while under the influence of or affected by intoxicating liquor or any drug.

This language was based on RCW 46.61.502(1)(c), commonly known as the "per se" prong of DUI. The second amended information did not allege the "affected by" alternative.

The defense rested after the close of the State's case. The court instructed the jury that it must find Manivanh guilty of DUI if the State proved beyond a reasonable doubt that "the defendant at the time of driving a motor vehicle (a) was under the influence of or affected by intoxicating liquor; or (b) had sufficient alcohol in his body to have an alcohol concentration of 0.08 or higher within two hours after driving as shown

---

[1] During argument, the State indicated that Knoy's testimony was expert testimony, but that he was qualified to testify to the average burn-off rate of alcohol in humans.

by an accurate and reliable test of the defendant's blood." The jury found Manivanh guilty on all counts.

II.

Manivanh first argues that the trial court abused its discretion by allowing the midtrial amendment. He contends that this is so because the defense strategy was to concede the BAC level exceeded the legal limit, but he was not guilty because there was a lack of evidence that he was "under the influence of or affected by" drugs or alcohol. We disagree.

CrR 2.1(d) provides that:

The court may permit any information . . . to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced.

CrR 2.1(d) is intended to "permit[ ] liberal amendment" of the charging document. State v. Goss, 189 Wn. App. 571, 576, 358 P.3d 436 (2015). The application of CrR 2.1(d) is constrained by article I, section 22 of the Washington State Constitution, which provides that "[i]n criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him." "Under this constitutional provision, an accused person must be informed of the charge he or she is to meet at trial, and cannot be tried for an offense not charged." State v. Pelkey, 109 Wn.2d 484, 487, 745 P.2d 854 (1987). This constitutional provision is designed to ensure that a criminal defendant has notice of the change to be met at trial. State v. Schaffer, 120 Wn.2d 616, 619-20, 845 P.2d 281 (1993).

It is a per se constitutional violation for the State to amend the information after it has rested its case, unless the amendment is to a lesser degree of the same charge or

-6-

a lesser included offense. Pelkey, 109 Wn.2d at 491. Our Washington Supreme Court has recognized that amending an information midtrial may violate article I, section 22.

> The constitutionality of amending an information after trial has already begun presents a different question. All of the pretrial motions, voir dire of the jury, opening argument, questioning and cross-examination of witnesses are based on the precise nature of the charge alleged in the information. Where a jury has already been empaneled, the defendant is highly vulnerable to the possibility that jurors will be confused or prejudiced by a variance from the original information.

Pelkey, 109 Wn.2d at 490. "Midtrial amendment of a criminal information has been allowed where the amendment merely specified a different manner of committing the crime originally charged." Pelkey, 109 Wn.2d at 490 (citing State v. Gosser, 33 Wn. App. 428, 656 P.2d 514 (1982)).

Deciding whether an amendment should be granted is left to the sound discretion of the trial court, and the court's decision is reviewed only for abuse of discretion. State v. Rapozo, 114 Wn. App. 321, 323, 58 P.3d 290 (2002). The defendant bears the burden of demonstrating that they were prejudiced by the amendment during trial. State v. Brisebois, 39 Wn. App. 156, 162-63, 692 P.2d 842 (1984).

While the State's late decision to amend the information to charge the "per se" prong of DUI statute instead of the "affected by" prong was not ideal, Manivanh fails to meet his burden of demonstrating prejudice.

At the outset, the amendment did not add a new offense, but rather an alternative means of committing the same crime originally charged—DUI. RCW 46.61.502 provides four alternatives for proving DUI. Relevant here,

> (1) A person is guilty of driving while under the influence of intoxicating liquor, marijuana, or any drug if the person drives a vehicle within this state:

(a) And the person has, within two hours after driving, an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.64.506; or

\*\*\*

(c) While the person is under the influence of or affected by intoxicating liquor, marijuana, or any drug; or

The State's first amended information alleged that Manivanh was in violation of RCW 46.61.502(1)(c). The midtrial amendment changed charge from a violation of RCW 46.61.502(1)(c) to RCW 46.61.502(1)(a)—"a different manner of the crime originally charged." Pelkey, 109 Wn.2d at 490-91. The likelihood that the jury would be confused by a variance in the original information was low since both charges were for DUI.

Manivanh's argument relies heavily on his characterization of opening statements where his counsel confirmed that Manivanh's blood alcohol level was 0.18. We disagree that prejudiced Manivanh. The prosecutor's preceding argument had already informed the jury that Manivanh's blood alcohol level was 0.18. Knoy then testified about the chain of custody, receiving the intact sample and testing the sample. Officer Christiansen testified to receiving the test and viewing that the result was 0.18. The defense's reference to the test results in opening statements was not a concession that the State proved its case, rather it was an acknowledgement of admissible evidence that the jury would hear during the trial. Further, the defense had notice that Knoy was a State witness.[2] The evidence admitted demonstrated Manivanh was in

_____

[2] Manivanh raises the issue that the State failed to identify during pretrial motions that Knoy would provide expert testimony under ER 702. We agree the State should have identified Knoy as an expert witness under ER 702. This failure, however, did not prejudice Manivanh because the State

violation of RCW 46.61.502(1)(a) beyond a reasonable doubt because his blood alcohol level was 0.18—over twice the allowable limit.

While Manivanh indicates that he "may have obtained an expert to attack the reliability of the process used to determine Manivanh's blood alcohol" this is speculation. Manivanh does not explain how an expert could have challenged the results of the BAC analysis. Without evidence, or even an offer of proof, that the BAC analysis was somehow inaccurate, the admitted evidence was more than enough for the jury to find Manivanh guilty beyond a reasonable doubt. Manivanh fails to demonstrate that he was prejudiced by the late amendment or that the trial court abused its discretion.

III.

Manivanh next contends the trial court did not intend to impose the $250 toxicology lab fee because trial court stated it would waive discretionary fees and the toxicology lab fee is discretionary. The State responds that Manivanh failed to raise this objection below and we should therefore decline review. RAP 2.5(a), however, gives this court discretion to address the imposition of legal financial obligations (LFOs) on appeal despite a lack of objection below. State v. Blazina, 182 Wn.2d 827, 835, 344 P.3d 680 (2015).

RCW 46.61.5054 appears on its face to assess a mandatory LFO. The statute provides that a $250 fee "shall be assessed to a person who is either convicted, sentenced to a lesser charge, or given deferred prosecution, as a result of violating

---

indicated it would call Knoy and, after moving to amend the information, offered the defense the opportunity to re-interview Knoy.

RCW 46.61.502." RCW 46.61.5054(1)(a). However, "[u]pon a verified petition by the person assessed the fee, the court may suspend the payment of all or part of the fee if it finds that the person does not have the ability to pay." RCW 46.61.5054(1)(b).

It is undisputed here that post sentencing the trial court found Manivanh indigent under the applicable statutory criteria. We remand to the trial court to exercise its discretion under RCW 46.61.5054(1)(b) to suspend the $250 toxicology lab fee in all or part based on Manivanh's financial situation.

We otherwise affirm.

_____ Mann, ACJ

WE CONCUR:

_____            _____